320 So.2d 214 (1975)
John P. BREAUX et al., Plaintiffs-Appellee,
v.
RIMMER & GARRETT, INC., et al., Defendant-Appellant.
No. 5083.
Court of Appeal of Louisiana, Third Circuit.
October 8, 1975.
*215 Marshall W. Wroten, Baton Rouge, for third party defendant-appellant.
Anderson, Leithead, Scott, Boudreau & Savoy by Norman F. Anderson, Lake Charles, for plaintiff-appellee.
*216 Aaron, Aaron & Chambers by Noble M. Chambers, Jr., Crowley, for defendant-third party plaintiff-appellee.
Before DOMENGEAUX, WATSON and MORRIS, JJ.
MORRIS, Judge.
Plaintiff landowners brought this suit against defendant, Rimmer & Garrett, Inc. (hereinafter sometimes referred to as the contractor), to recover the value of 6,600 linear feet of 5-inch steel pipe removed from their property by defendant and retained in defendant's possession. State of Louisiana, Department of Highways, was made a third-party defendant.
On April 28, 1934, John Breaux, the predecessor in title of the present plaintiffs, granted unto Barnsdall Pipeline Company a right-of-way "to lay, maintain, operate and remove a pipeline" on certain property situated in Calcasieu Parish for the transportation of oil and gas. This grant of right-of-way was filed of record on May 11, 1934 and recorded in the conveyance records of Calcasieu Parish.
In 1967 the owners granted unto the State of Louisiana, Department of Highways, (hereinafter sometimes referred to as the department) a right-of-way on, over and across property which included that subject to the 1934 pipeline right-of-way. In 1974 the Department of Highways entered into a contract with Rimmer & Garrett, Inc. for the construction of a concrete paved highway on the property thus acquired. This contract also provided for the removal by Rimmer & Garrett, Inc. of the 5-inch pipeline located on the property, for which the contractor was to be paid 75¢ per linear foot. The contract specifically provided that:
"Removed pipe shall be disposed of beyond the limits of highway right-of-way with written permission of the property owner on whose property the material is placed.
"Removal of pipe will be measured along the center line of pipe in its original position, and payment will be made at the contract unit price per linear foot, which includes all excavation, removal and disposal of pipe, backfilling, and all work necessary to complete the item. Payment will be made under: Item S-7, removing 5" pipeline, per linear foot."
Contractor proceeded to remove the 5-inch pipe from plaintiff's property and disposed of same by hauling it to its place of business and, so far as the record shows, retaining possession thereof. Plaintiffs do not sue for possession of the pipe, but only the market value at the time of removal.
Defendant filed an answer denying liability and made the State of Louisiana, Department of Highways, a third party defendant, alleging that it was acting under the contract and any judgment recovered against defendant should also be rendered in favor of defendant and against the State of Louisiana, Department of Highways, in the same amount that defendant might be cast.
At the trial of this matter testimony was elicited without objection that the pipeline was last used 17 years prior to its removal. A letter from Mobil Oil Corporation, apparently the successor of the right-of-way grantee, addressed to the Department of Highways, dated June 14, 1967, was admitted in evidence without objection. This letter states that the 5-inch pipeline was an abandoned oil line. In a written stipulation of facts it was agreed that the pipe had a fair market value of $1,980.00 at the time of removal.
Judgment was rendered in the district court in favor of plaintiffs and against defendant, Rimmer & Garrett, Inc., in the sum of $1,980.00, the amount stipulated by the parties to have been the value of the pipe removed, with legal interest from date of judicial demand until paid and for all costs. Judgment was also rendered in favor of Rimmer & Garrett, Inc. *217 and against the third party defendant, Department of Highways, State of Louisiana, in the same amount, together with all costs required by law to be paid by the Department of Highways. The Department of Highways alone appeals from this judgment, and none of the other parties have answered the appeal. The judgment against Rimmer & Garrett, Inc. on the main demand is, therefore, final. LSA-C. C.P. Art. 2133. However, in view of the provisions of LSA-C.C.P. Art. 1115 which provide that a third party defendant may assert against the plaintiff in the principal action any defenses which the third party plaintiff has against the principal demand, we deem it necessary to review the issues presented in the trial court, although the judgment against Rimmer & Garrett, Inc. cannot be changed. See Meaux v. Hoffpauir, 219 So.2d 551 (La.App.3rd Cir. 1969) and particularly footnote 5, p. 556, Writ ref. 253 La. 1096, 221 So.2d 522.
We agree with the trial judge that plaintiffs were the owners of the pipe at the time of its removal from the property. However, plaintiffs did not become the owners of the pipe by the mere extinguishment of the servitude by non-usage for ten years.
The pipeline right-of-way provided for a right of removal, but expressed no time for removal. An analogous situation was presented in several cases dealing with mineral servitudes and the removal of drilling equipment and pipe. In Standard Oil Company of Louisiana v. Barlow, 141 La. 52, 74 So. 627 (1917), involving an oil and gas lease, the court had under consideration the removal of equipment by the lessee upon termination of the lease. The contract into which the litigants had entered conferred upon the lessee "the right to remove all machinery, fixtures and improvements placed [on the leased premises] at any time." The court held that if the lessee defers the removal of his equipment for so long a time as to authorize the belief that he has abandoned it, the property would vest in the lessor, but otherwise the lessee is entitled to a reasonable time after the expiration of his lease within which to take such action. In Donnell v. Gray, 34 So.2d 648 (La.App. 2d Cir. 1948), which also involved a mineral lease or servitude and the right to pipe and equipment left on the leased premises, Judge Hardy as organ of the court reviewed extensively the jurisprudence both in this state and other jurisdictions regarding the right to equipment upon an extinguished servitude. The court held that the right to remove "at any time" in the lease agreement was synonymous with the phrase "a reasonable time" and found that an act of abandonment had been conclusively established entitling the land owner to the abandoned equipment. Although this case was reversed by the Louisiana Supreme Court [215 La. 497, 41 So.2d 66 (1949)], the reversal was based on a finding that the proof was insufficient to prove an abandonment. The court held that under LSA-C.C. Art. 3421, in order to vest title and control in the landowner there must be an act of abandonment coupled with an intent to abandon.
Although no time for removal of the pipe was expressed in the right-of-way grant herein, a reasonable time is implied. Guzzo v. Liggio, 224 La. 313, 69 So.2d 357 (1954); Schnauder v. Rojas, 292 So.2d 754 (La.App. 4th Cir. 1974). According to the testimony there was a period of 7 years after the expiration of the servitude for non-user in which the grantee made no effort to recover the pipe, and the "reasonable time" for the exercise of the right to remove had long since expired. Furthermore, the letter from Mobil Oil Corporation addressed to Louisiana Department of Highways states that the oil line had been abandoned. Proof of abandonment is conclusive and ownership of the pipe became vested in the landowners under LSA-C.C. Art. 3421 and the rationale of the above cases.
The second issue presented in the trial court was whether the landowners *218 transferred ownership to the Department of Highways in the right-of-way deed. This deed conveys only a servitude and contains the following language, to-wit:
"It is understood and agreed that, in the construction and maintenance of said highway, Department may move to or remove from the property herein described earch or other material in accordance with usual highway construction and maintenance practices."
No ownership was conveyed to the department by this language and we agree with the trial judge that the entire purpose of the provision was to make it possible for the department to construct the highway, and to accomplish that purpose the department must of necessity have the right to remove any obstruction from the right-of-way. That was the obvious purpose of the above quoted paragraph, and we cannot construe this paragraph as conveying any ownership.
Concluding that plaintiffs had become owners of the pipe by virtue of the abandonment and that they had not conveyed ownership in the right-of-way deed, leaves the question of liability of the contractor for the value of the pipe removed. During the removal of the pipe Charles W. Breaux, one of the plaintiffs, asserted a right of ownership and possession, and requested that the workmen roll the pipe over on the adjacent property which plaintiffs owned. Even the contractor's employee admitted that there was some statement to that effect by Mr. Breaux, although he attached a different meaning to the words. It is manifest, however, that plaintiffs were asserting some ownership of the pipe and a right to possession. When the contractor disposed of the pipe by taking possession thereof as owner it became liable to the true owner for the market value. Liability of Rimmer & Garrett, Inc. is based upon LSA-C.C. Art. 532 which provides that damages may be recovered against those who have employed materials belonging to others, unknown to them, according to the circumstances. The contractual obligation "to remove and dispose of" would not affect the rights of the true owners, or convey ownership.
The Department of Highways defends the third party demand on the basis of the hold harmless clause contained in its contract with Rimmer & Garrett, Inc. This contractual provision provides as follows:
"107.15. RESPONSIBILITY FOR DAMAGE CLAIMS. The contractor shall indemnify and save harmless the Department, its officers and employees from all suits, actions or claims of any character brought because of any injuries or damage received or sustained by any person, persons or property on account of the operations of the said contractor; or on account of or in consequence of any neglect in safeguarding the work; or through use of unacceptable materials in constructing the work; or because of any act or omission, neglect or misconduct of said contractor; or because of any claims or amounts recovered from any infringements of patent, trademark or copyright; or from any claims for amount arising or recovered under the "Workmen's Compensation Act" or any other law, ordinance, order or decree; . . . ."
The department claims that this indemnity clause relieves it of responsibility for the contractor's performance even though contractor has done only what the contract called for.
Indemnity agreements must be strictly construed, especially when a party seeks to be indemnified for damage caused by its own negligence. Jurisich v. Louisiana Southern Oil & Gas Co., 284 So.2d 173 (La.App.4th Cir. 1973). If the contract of indemnity is to be construed to indemnify the indemnitee against losses resulting to him through his own negligent acts, such intention must be expressed in unequivocal terms. Green v. Toca International Airlines, 304 So.2d 357 (La.Sup.Ct.1974). In *219 Arnold v. Stupp Corporation, 205 So.2d 797, (La.App., 1st Cir. 1967) the court had under consideration an indemnity clause similar to the one in the present matter, and the court observed that the general words "any and all liability" do not necessarily import an intent to impose an obligation so extraordinary and harsh as to render an indemnitor liable to an indemnitee for damages occasioned by the sole negligence of the latter. In Buford v. Sewerage and Water Board of New Orleans, 175 So. 110 (La.App.Orl.1937) the indemnity clause was so broad as to indemnify against "all suits or actions of any name or description brought against them [the indemnitees] for or on account of any injuries or damages received or sustained by any party or parties by or from said Contractor, his servants or agents in the construction of said work." The court held that this language did not express a clear intent to indemnify the indemnitee from its own fault or neglect. LSA-C.C. Art. 3039 also requires that surety agreements be restrained within the limits intended by the contract.
The effect to be given to the hold harmless clause under consideration in the present matter depends upon the intention of the parties, which is the foremost requirement in the interpretation of any contract. LSA-C.C. Art. 1945. This clause commences with a general indemnification against all actions of any character for injuries or damages received on account of the operations of the contractor. If these words mean what they say, and had that been the intention of the parties, nothing further would have been required. Yet this phrase is followed by specific words providing for (1) indemnification for neglect or misconduct of the contractor, (2) indemnification for use of unacceptable materials, (3) indemnification on patent infringements, and (4) indemnification from workmen's compensation claims. It is a general rule of construction of contracts that, unless a contrary intention appears from the contract as a whole, the meaning of general words will be restricted by the more specific terms or descriptions of the subject matter. Mixon v. St. Paul Fire & Marine Ins. Co. of St. Paul, Minn., 147 La. 302, 84 So. 790 (1920); Lafleur v. Sylvester, 135 So.2d 91 (La. App. 3rd Cir. 1961); LSA-C.C. Arts. 1959-1961. Therefore, we feel constrained to hold that the general words of the hold harmless clause are restricted by the more specific words of indemnification. The clause does not constitute an unequivocal expression of an intent to make the contractor liable for the acts of the Department of Highways on matters for which the department was responsible. The obvious purpose of the indemnity clause, considered as a whole, was to make the contractor liable for matters within its orbit of responsibility.
The removal and disposal of the pipe by Rimmer & Garrett, Inc. was required by the contract with the department. The Department of Highways assumed the responsibility in the contract of ordering the disposal, mistakenly believing, we think, that the department was the owner of the pipe. In this the department may have been influenced by the letter from Mobil Oil Corporation, which in addition to declaring the pipeline abandoned, follows with the statement:
"Mobil hereby relinquishes all its rights in this line within the project right-of-way to the Louisiana State Highway Department."
The rights of the department, however, cannot be greater than the rights of the pipeline servitude grantee, and as hereinabove shown the rights of that grantee had long ago terminated. Mobil Oil could not vest in the department greater rights than it had.
It is also obvious from the contract that the department considered the pipe non-salvageable, for the only requirement was that the contractor obtain permission from any landowner on whose property the pipe was placed. This was to *220 protect the department from damage claims or the necessity of making a subsequent disposal of the pipe. Had this been considered a salvageable item the department would have provided in the contract for delivery to itself, not the disposal thereof. The department undertook the responsibility of ordering and contracting for the disposal of the pipe. It had the obligation of determining whether it had a right to require this disposal, which could only be based on a proprietary interest. It undertook to contract for the disposal of the pipe and further left the manner of disposal entirely to the discretion of Rimmer & Garrett, Inc., except as to the above noted requirement of landowner permission. The contractor did what it was obligated to do under the contractremove and dispose of the pipe. In so doing the contractor was guilty of no wrong-doing, neglect or fault, insofar as the department is concerned. It was not up to the contractor to determine or question the proprietary interest asserted by the department in the contract, and the hold harmless clause does not operate to relieve the department of its responsibility, which was to properly determine its rights in and to the pipe before directing its removal.
Third party defendant relies heavily on Chaney v. The Travelers Insurance Company, 259 La. 1, 249 So.2d 181 (1971) which we do not, however, find applicable. In that case damages were inflicted by the failure of the contractor to take such precautions in the use of heavy equipment that the neighboring landowner would not be injured, a responsibility which, the Court held, was as much that of the agent or contractor of the proprietor under LSA-C.C. Art. 667 as the owner himself. There was no question of the intent to indemnify against the wrongful acts of the indemnitee, for the wrongful act was also that of the indemnitor. They were equally responsible for the acts which caused the damages. In the present matter the claim of plaintiffs arose from a matter in which the department was solely responsible, for it was incumbent upon the department when contracting for the removal and disposal of the pipe to determine at its risk that it had the proprietary right or ownership in the pipe necessary to direct that this be done. The cited case and the instant matter do not present the same situation for consideration.
For the reasons assigned, the judgment of the trial court is affirmed at the department's cost.
Affirmed.