441 So.2d 379 (1983)
SEARS, ROEBUCK AND COMPANY
v.
SHAMROCK CONSTRUCTION CO., INC. and Commercial Union Insurance Company.
No. 83-CA-417.
Court of Appeal of Louisiana, Fifth Circuit.
November 9, 1983.
*380 Bruce C. Butcher, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, for plaintiff-appellant.
Edward A. Rodrigue, Jr., Boggs, Loehn & Rodrigue, New Orleans, for defendants-appellees.
Before CURRAULT, GAUDIN and GRISBAUM, JJ.
CURRAULT, Judge.
Plaintiff, Sears, Roebuck and Company brought an action for property damages against defendant, Shamrock Construction Company, a contractor employed by plaintiff, Sears Roebuck and Company, to repave a concrete area located at its facilities on Jefferson Highway. Also made party defendant was defendant's insurer, Commercial Union Insurance Company.
The facts reveal that by letter dated February 6, 1979, William J. Hogan, the president of Shamrock Construction Company, Inc. (Shamrock), submitted a proposal to Charles Easterling, the manager of the Sears Regional Distribution Center located at 1601 Jefferson Highway, Jefferson, Louisiana (Sears). Pursuant to that proposal, Shamrock provided Sears with a suggestion for alleviating a water drainage problem at the receiving area of the warehouse by removing the concrete driveway and replacing it at a higher elevation.
The concrete which Shamrock contracted to remove was located directly over two 3,000 gallon underground gasoline storage tanks, and the filler caps for the underground tanks were apparent on the surface of the driveway area.
On the basis of the Shamrock proposal, a written contract dated February 26, 1979 was entered into by Sears and Shamrock pursuant to which Shamrock agreed to perform all of the labor, materials and work *381 necessary to, among other things resolve the water drainage problem.
On April 23, 1979, three employees of Shamrock proceeded to break the concrete above the gasoline tanks. In the afternoon of the first day of work, Sears personnel were informed by a Shamrock employee that an underground waterline had been broken by Shamrock. Later that same afternoon, gasoline began leaking from the underground storage tanks and the fire department was contracted in Jefferson Parish. An emergency unit arrived at the scene and took immediate measures to prevent a dangerous explosion. A chemical substance known as "light water" was pumped over the area to minimize the possibility of fire and the area was covered with sand. The fire department also ordered that the gasoline be pumped out of the tanks, trucked away and safely disposed of.
Pursuant to their request, Sears reimbursed the fire department for its expenses, and also paid for all of the costs of pumping, removing and disposing of the gasoline. In addition, the two underground gasoline storage tanks were replaced. Written request was subsequently made by Sears to Shamrock for reimbursement of these expenses, including a portion of the tank replacement costs. Shamrock and its insurance carrier refused; and, as a result, plaintiff filed this action for damages alleging the defendant's negligence. Trial was held on April 8, 1982 and September 27, 1982.
On the first morning of the hearing, the court granted plaintiff leave to amend the petition to include the issue of contractual liability. At that time, plaintiff also attempted to increase the amount of damages sought in its petition from Six Thousand Three Hundred Five Dollars and Twelve Cents ($6,305.12) to Fourteen Thousand Three Hundred Seventy-Six Dollars ($14,376), which motion was denied by the trial court. On October 28, 1982, the trial court rendered judgment in defendant Shamrock's favor dismissing plaintiff's case. That judgment was amended on November 5, 1982 to include a finding in favor of the defendant-insurer, Commercial Union Insurance Company.
Plaintiff, Sears, consequently perfected this appeal from the judgment of the trial court.
The issues presented for appeal are:
(1) Whether the damage to the underground storage tank was due to the negligence of Shamrock;
(2) Whether the terms and conditions of the contract between Sears and Shamrock, as a matter of law, require Shamrock, and its defendant insurer, to fully indemnify Sears for all of the damages it sustained;
(3) Whether Sears is entitled to indemnification for reasonable attorneys' fees as an expense under the indemnification provision in the contract;
(4) Whether Sears should have been granted leave to amend its petition to set forth an additional item of damage;
(5) Whether Sears should have been permitted to introduce evidence at trial to show its additional damages incurred in connection with the emergency.
The first issue presented by appellant alleges defendant's liability pursuant to LSA-C.C. art. 2762, 2769 (implied warranty) and LSA-C.C. art. 2315 (negligence). Appellant contends that it satisfied its burden of proof under those articles noting that while the burden of proof is by a preponderance of the evidence, that the burden may be satisfied by circumstantial evidence. A & M Pest Control Serv. v. Fejta Const. Co., 338 So.2d 946 (La.App. 4th Cir.1976).
As appellant aptly notes, the test of sufficiency in a circumstantial evidence case is set forth by the Louisiana Supreme Court in Naquin v. Marquette Casualty Company, 244 La. 569, 153 So.2d 395, 397 (La.1963). In Naquin, the court stated:
"... Taken as a whole, circumstantial evidence must exclude other reasonable hypotheses with a fair amount of certainty. This does not mean, however, that it must negate all other possible causes. Otherwise, the mere identification by the record of another possibility, although not *382 shown to be causally active, would break the chain of causation."
See also Carter v. The City Parish Government of East Baton Rouge, et al, 423 So.2d 1080 (La.1982).
In Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151, 155 (La. 1971), the Louisiana Supreme Court stated, citing Naquin, among other cases:
"... Whatever the descriptive term used, however, proof by direct or circumstantial evidence is sufficient to constitute a preponderance, when, taking the evidence as a whole, such proof shows that the fact or causation sought to be proved is more probable than not."
Causation herein, as appellant points out, can only be inferred from the circumstantial evidence surrounding the gasoline spillage.
In this regard, the trial court judge found as a factual matter that:
"The expert testimony introduced at the time of the trial showed that: (1) Sears had previous problems with leaks in the tanks in question; (2) There was no damage done to the tanks themselves by the breaking of concrete by Shamrock; (3) The damages were not caused by any work performed by Shamrock. Likewise, there was no evidence to show that the leaks were caused by the work of defendant, Shamrock. Further, there was evidence to show these tanks were leaking previously." (Reasons for Judgment)
It is well settled in Louisiana that:
"When there is evidence before the trier of facts which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding, on review the appellate court should not disturb this factual finding in the absence of manifest error .... The reason for this well settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record) but also upon the proper allocation of trial and appellate functions between the respective courts." Canter v. Koehring Co., 283 So.2d 716, 724 (La.1973).
Applying this standard, the court must thus determine if the trial court's findings were "manifestly erroneous" or "clearly wrong." Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
The evidence shows that appellee Shamrock began breaking the existing concrete pavement on April 23, 1979. In an area near, but not directly upon the underground storage tanks, the workers discovered that the concrete was unusually thicker than normal. Consequently a drop hammer (a large piece of equipment) was used to break the concrete. The testimony indicated that the drop hammer was not used in close proximity to the filler caps of the gas tanks, but that the concrete in that area was broken manually within an eight foot radius. At approximately 2:45 p.m., an underground water pipe was broken. The existence of the pipe was unexpected by defendant because of its unusually close proximity to the bottom of the concrete slab. Appellee immediately notified appellant as well as a plumber. The plumber arrived shortly thereafter, but not expecting to find galvanized pipe, lacked the necessary equipment to make repairs and thus was unable to repair the pipe that day. Appellee notified appellant of the fact and, since quitting time was approaching, asked the Sears manager, Charles Easterling, whether or not to shut off the water. Mr. Easterling opted to leave the water running until closing time, at which time he stated that they would shut the water off. As usual at 3:30 p.m., the Shamrock employees left for the day.
Shortly after the construction crew departed, a gasoline odor was noticed by Sears' employees. Upon investigation it was discovered that gasoline, mixed with water, was leaking onto the pavement from the underground tanks. The fire department was called out and took the emergency measures mentioned earlier. The Shamrock supervisor also was notified and returned to the construction area.
*383 In attempting to determine whether the leak occurred as a result of the activities of defendant, the trial court placed great weight on the testimony of Mr. Bob Ballance of Beacon Enterprises. Mr. Ballance was the only qualified, expert witness to testify on the testing, installation, repair and maintenance of underground gasoline storage tanks. In addition, his company also serviced the Sears tanks. His testimony indicated that the only damage incurred as a direct result of defendant's conduct was the minor and unavoidable damage to the bushings which were connected to the filler caps. Mr. Ballance, as well as other witnesses, noted that the bushings were embedded in the concrete. He noted that installation in that manner was unusual and undesirable and that the concrete could not be broken without breaking the bushings. Bushings, he testified, are fragile and are easily broken even while installing them. He further stated that the tanks were old and had been leaking for several years. On several occasions his company had been called to pump groundwater from the tanks. Mr. Ballance tested the tanks shortly after the accident, confirming the existence of bottom leaks in the tanks. He stated that the water table at the time was high and that it was his opinion that the cause of the spillage was groundwater already in the tanks from the old bottom leaks which forced the gasoline up and out when the bushings broke apart from the tank. Appellant, on the other hand, asserted that the gasoline spillage occurred either because of defendant's use of heavy equipment causing extreme vibration or because of the broken water pipe. The testimony of appellant's witnesses, however, failed to preponderantly link either the vibration or the broken water pipe to the accident. It is our opinion that the reasonable hypothesis opined by the critical expert was not excluded; and, further, that the trial judge's findings after weighing the credibility of the witnesses were not clearly wrong.
The second issue is related to contractual liability of the contractor under the indemnification provision. The question in this regard is whether the indemnification or "hold harmless" clause applies with or without a finding of the contractor's negligence.
Paragraph 3 of the Sears contract deals primarily with the obligation of Shamrock to obtain its own insurance, but also contains a brief sentence dealing with indemnity:
"The Contractor shall also protect, defend, save harmless and indemnify the Company, its employees and public, from any claims, demands, or expense on account of any injury, alleged or real, to persons, or damage, alleged or real, to property, arising out of anything done or omitted to be done under this agreement."
Another indemnity provision is contained in the General Conditions of the Contract for Construction as published by the American Institute of Architects (AIA) which is incorporated by reference in the beginning of the Sears contract. That provision provides in case of conflict that the Sears provision overrides the A.I.A. provision. The A.I.A. provision stated in Paragraph 4.18, INDEMNIFICATION:
"To the fullest extent permitted by law, the Contractor shall indemnify and hold harmless the Owner and the Architect and their agents and employees from and against all claims, damages, losses and expenses, including but not limited to attorney's fees arising out of or resulting from the performance of the Work, provided that any such claim, damage, loss or expense (1) is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) including the loss of use resulting therefrom, and (2) is caused in whole or in part by any negligent act of omission of the Contractor, any Subcontractor, anyone directly or indirectly employed by any of them or anyone for whose acts any of them may be liable, regardless of whether or not it is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or otherwise reduce any other right or obligation of indemnity which would otherwise *384 exist as to any party or person described in this Paragraph 4.18." (Emphasis added)
Appellant argues that negligence is not a requirement of indemnity provisions. However, whatever the merits of that argument may be in other cases where the language involved does not insert negligence as a criteria for indemnity, the contract herein does so state and Louisiana law mandates that the contract is the law between the parties. LSA-C.C. art. 1945.
If these clauses are "conflicting" as appellant further asserts, then by the terms of the contract, the Sears provision, which does not require negligence by the contractor, would apparently prevail entitling appellant to a judgment in its favor. Appellee, however, argues that the A.I.A. provision does not conflict, but is a specific clause that clarifies the general Sears provision.
Citing Breaux v. Rimmer and Garrett, Inc., 320 So.2d 214 (La.App. 3d Cir.1975), appellee argues that general words of indemnity provisions are restricted by more specific terms. As the court notes in Breaux:
"It is a general rule of construction of contracts that, unless a contrary intention appears from the contract as a whole, the meaning of general words will be restricted by the more specific terms or descriptions of the subject matter. Mixon v. St. Paul Fire & Marine Ins. Co. of St. Paul, Minn., 147 La. 302, 84 So. 790 (1920); Lafleur v. Sylvester, 135 So.2d 91 (La.App. 3d Cir.1961); LSA-C.C. arts. 1959-1961." At page 219.
This court is persuaded after reading the contract, including the A.I.A. document, as a whole, that the indemnity provisions are not conflicting but modifying. In addition, we find that the more specific terms of the indemnity provision found in the A.I.A. clause are such restrictions as contemplated by the Breaux case. Thus, as a negligence finding is a prerequisite to indemnification by the contractor to the owner under this contract and no negligence was found herein, appellant is not entitled to indemnification.
Finally, in consideration of the foregoing, appellant's issues four and five need not be addressed since they concern plaintiff's request to amend the petition to include damages not originally demanded.
For the foregoing reasons, after a review of the law and the record, the trial court judgment dismissing plaintiff's case is hereby affirmed. Appellant is to pay all costs of this appeal.
AFFIRMED.