550 So.2d 340 (1989)
Rita ORTEGO, Austin Wyble, Jr. and Arthur Wyble, Plaintiffs-Appellees,
v.
SEVARG COMPANY, INC., Defendant-Appellant.
No. 88-605.
Court of Appeal of Louisiana, Third Circuit.
October 4, 1989.
*341 Thomas DeJean, Opelousas, for plaintiffs-appellees.
Darryl J. Hebert, Eunice, for defendant-appellant.
Before GUIDRY, LABORDE and KNOLL, JJ.
KNOLL, Judge.
Sevarg Company, Inc. (hereafter Sevarg), a mineral lessee, appeals the judgment of the trial court which found a pipeline located on lands of the mineral lessors, Rita Ortego, Austin Wyble, Jr., and Arthur Wyble, was owned by the lessors because of ambiguous language in the mineral lease and ten years non-use by the lessee of the pipeline. Accordingly, it found that the mineral lessors were entitled to trespass damages of $5,000, and $4,500 for the lessee's unlawful use of the pipeline.
Sevarg contends on appeal that the trial court erred: (1) in concluding Sevarg did not have the right to use the pipeline under authority of the oil, gas, and mineral lease; (2) in its determination that Sevarg's use of the pipeline constituted a trespass; (3) in *342 awarding damages; and, (4) in dismissing Sevarg's reconventional demand.

FACTS
On March 16, 1959, Mrs. Belle Budd Lalonde, as lifetime usufructuary, and Austin Wyble, Arthur Wyble, and Edward Wyble, as owners in indivision, granted Flippen McLean an oil, gas, and mineral lease on 38 acres in St. Landry Parish. On March 18, 1959, McLean assigned the mineral lease to Colorado Oil and Gas Corporation.
The original lease provided, in pertinent part:
"Lessor, in consideration of the sum of FIVE HUNDRED AND NO/100 DOLLARS & O.V.C. ($500.00), hereby leases and lets unto Lessee, the exclusive right to enter upon and use the land hereinafter described for the exploration for, and production of oil, gas, sulphur and all other minerals, together with the use of the surface of the land for all purposes incident to the exploration for and production, ownership, possession, storage and transportation of said minerals (either from said land or acreage pooled therewith), and the right to dispose of salt water, with the right of ingress and egress to and from said lands at all times for such purposes, including the right to construct, maintain and use roads, pipelines, and/or canals thereon for operations hereunder or in connection with similar operations on adjoining land, and including the right to remove from the land any property placed by Lessee thereon and to draw and remove casing from wells drilled by Lessee on said land;..."
On July 1, 1960, Colorado Oil and Gas obtained a written right of way from Mrs. Lalonde and the Wybles for the placement of a pipeline across their property at a specific location. This pipeline was constructed to serve the W. Miller No. 1 well, a gas well located east of the Lalonde/Wyble property, which connected that gas well with storage tanks situated west of the Lalonde/Wyble property.
On March 31, 1961, Austin, Arthur, and Edward Wyble partitioned the property into three equal tracts. Austin Wyble was allotted the easternmost lot; Edward Wyble the westernmost lot; and, Arthur Wyble the middle lot.
It was undisputed at trial that the W. Miller No. 1 gas well was plugged and abandoned on July 16, 1971, and at the time of the initiation of this lawsuit the pipeline across the Wyble property had not been in use for a period in excess of 10 years. It was also undisputed that the original mineral lease was still in effect due to the inclusion of the property in a unit which had producing wells located off the Wyble tract.
In December 1982, Coastal Oil & Gas Corporation (formerly known as Colorado Oil and Gas Corporation)[1] assigned its interest in the Lalonde/Wyble lease and mineral leases on surrounding property to Brown-McKenzie, Inc.[2] and Sevarg. During that same month, Sevarg constructed a new pipeline from a new gas well on the Courville property, a tract of land located east of the Lalonde/Wyble property. The new pipeline ran west across the Leonville Road onto Austin Wyble's property; it then went northward along Austin Wyble's eastern boundary, parallel to the Leonville Road, and tied into the gas pipeline which was installed in 1960. In September 1986, Arthur Wyble refused to allow Sevarg's employees onto the three partitioned tracts of the Lalonde/Wyble property to repair a leak which developed in the old pipeline which had been constructed in 1960. As a result, the well which was serviced by the pipeline was shut down until January 1987 when the pipeline was repaired.
*343 On January 11, 1987, Arthur Wyble, Austin Wyble, and Rita Ortego, apparently a successor in title to Edward Wyble, instituted this lawsuit against Sevarg for damages.

1959 MINERAL LEASE
Sevarg contends that the trial court erred when it found the 1959 mineral lease ambiguous and utilized the 1960 pipeline right of way to ascertain the parties' intent.
A mineral lease is a contract by which the lessee is granted the right to explore for and produce minerals. LSA-R.S. 31:114. Louisiana mineral leases are construed as leases generally, and wherever pertinent, codal provisions applicable to ordinary leases are applied to mineral leases. St. Romain v. Midas Exploration, Inc., 430 So.2d 1354 (La.App. 3rd Cir.1983). A lease contract is the law between the parties and it defines their legal rights and obligations. Odom v. Union Producing Company, 243 La. 48, 141 So.2d 649 (1962).
When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. LSA-C.C. Art. 2046. The pertinent language of the 1959 mineral lease states:
"Lessor ... hereby leases and lets unto Lessee, the exclusive right to enter upon and use the land hereinafter described for the exploration for, and production of oil, gas, sulphur and all other minerals, together with the use of the surface of the land ... including the right to construct, maintain and use ... pipelines ... thereon for operations hereunder or in connection with similar operations on adjoining land...." (Emphasis added.)
The trial court determined that this contract language did not permit Sevarg to transport other property owners' minerals through lessors' land by use of the pipeline. It also found that the assignment from Coastal Oil and Gas to Sevarg did not include the 1960 right of way, executed subsequent to the lease. In reaching its conclusion, the trial court found that the lease provision cited above was ambiguous and would be construed in light of the interpretation given by the parties. Furthermore, the trial court specifically found that the right of way demonstrated the parties' intent to restrict the pipeline provision of the mineral lease to production from lessors' property.
We agree, but for different reasons, with the trial court's conclusion that Sevarg did not have the right to extend the pipeline through Austin Wyble's property, and use the existing pipeline to transport gas from the new gas well located to the east of the Wybles' property.
Contrary to the trial court's findings, we find the language of the mineral lease clear and unambiguous; accordingly, we find it unnecessary to search for the parties' intent. The contract specifically provides that pipelines may be constructed and used across lessors' property even if mineral production is not on lessors' property, if such operations are conducted on adjoining land.
Adjoining means contiguous; abutting; touching or contiguous as distinguished by lying near or adjacent. Melder v. Great American Ins. Co., 9 So.2d 243 (La.App. 2nd Cir.1942).
In the case sub judice, the witnesses showed on various exhibits that the Leonville Road separates the Wyble property from the gas operation conducted east thereof. In light of this physical evidence as to the location of the Leonville Road, we find that since Sevarg was relying on the lease as authority for it to traverse the property of Ortego and the Wybles, it was incumbent upon it to show who owned the road, i.e., the State of Louisiana, the Parish of St. Landry or by an individual, and thus establish that its operations were being conducted on adjoining land. No such evidence was adduced.
Accordingly, we find that Sevarg failed to carry its burden of proof that the properties were adjoining. Therefore, we find that Sevarg has not established that it can rely on the lease for authority to extend the pipeline and to use the old Colorado Gas pipeline.

*344 PIPELINE OWNERSHIP
Sevarg next contends that the trial court erred in awarding $4,500 damages to Ortego and the Wybles for Sevarg's use of the pipeline. It argues that no damages were due because the plaintiffs failed to establish their ownership of the pipeline. We agree.
We note that nowhere in the trial court's written reasons did it specifically find that Ortego and the Wybles were the owners of the pipeline. However, since the trial court awarded them damages, we find that it impliedly found them to be the owners of the pipeline. In making this finding, we conclude that the trial court could have based its ruling on two theories: (1) under LSA-C.C. Art. 493; or (2) under the concept of abandonment found in LSA-C.C. Art. 3418, et seq.
LSA-C.C. Art. 493 provides:
"Buildings, other constructions permanently attached to the ground, and plantings made on the land of another with his consent belong to him who made them ...
When the owner of buildings, other constructions permanently attached to the ground, or plantings no longer has the right to keep them on the land of another, he may remove them subject to his obligation to restore the property to its former condition. If he does not remove them within 90 days after written demand, the owner of the land acquires ownership of the improvements and owes nothing to their former owner."
In Guzzetta v. Texas Pipeline Company, 485 So.2d 508 (La.1986), a case which addressed an issue similar to the one herein, the Louisiana Supreme Court held that in the absence of proof of abandonment, the applicable code article is LSA-C.C. Art. 493. In making this determination, the Supreme Court found that Art. 493 provides that the constructions permanently attached to the ground by consent of the owner, remain the property of the one who constructed them and become the property of the landowner only after the former's failure to remove the permanent construction within 90 days after written demand. After carefully reviewing the present record, we find no evidence that Ortego or the Wybles made written demand on Colorado Gas or its successors to remove the pipeline in the manner provided by LSA-C.C. Art. 493. In fact, the testimony of the Wybles, the only two landowners to testify, was that no such demand was made. Thus, even though the pipeline servitude did expire by reason of 10 year nonuse, it is apparent that Ortego and the Wybles cannot rely on LSA-C.C. Art. 493 for the establishment of their ownership of the old pipeline.
We now consider whether there was sufficient proof that the pipeline was abandoned.
LSA-C.C. Art. 3418 provides:
"One who takes possession of an abandoned thing with the intent to own it acquires ownership by occupancy. A thing is abandoned when its owner relinquishes possession with the intent to give up ownership."
In Breaux v. Rimmer & Garrett, Inc., 320 So.2d 214 (La.App. 3rd Cir.1975), we found that after the extinction of a servitude, accessories such as a pipeline continue to belong to the owner of the accessories. However, if the property is abandoned, the landowner acquires ownership by accession. The basis of our decision in Breaux was former LSA-C.C. Art. 3421 which was reenacted without substantive change as LSA-C.C. Art. 3418, quoted above. In Breaux there was a period of seven years after the expiration of a pipeline servitude in which the pipeline company made no effort to recover the pipe. The appellate court considered this inaction together with a letter from the pipeline company to a third party stating its intent to abandon the pipeline as proof sufficient to establish abandonment. Accordingly, we found that the landowners became the owners of the pipe.
In the present case, there is no documentary evidence or testimonial proof that Colorado Gas ever evidenced an intent to abandon this pipeline. The only testimony in this regard is that of Austin Wyble *345 and his brother that, at some point in time, following cessation of use of the pipeline, someone from Colorado (completely unidentified) told them that a "moisture pipe" connected to the line and extending above ground could be removed. The Wybles testified that this unidentified person told them that the moisture pipe could be taken up by themselves because it was abandoned.
After carefully considering the testimony, we find that the evidence fails to preponderate that Colorada Gas or Coastal abandoned the old pipeline. Accordingly, we find that the trial court was manifestly erroneous in awarding damages to Ortego and the Wybles for Sevarg's use of the pipeline.
Furthermore, we find that even if there had been sufficient proof of Ortego and the Wybles' ownership of the pipeline, the trial court erred in making an award for damages for Sevarg's use of the pipeline. In the case sub judice, the trial court concluded that since the original right of way for the pipeline cost Colorado Gas $450, it would have cost Sevarg $4,500 to obtain a like agreement in today's market. When damages are claimed, their amount must be proven with certainty. Coon v. Placid Oil Co., 493 So.2d 1236 (La.App. 3rd Cir.1986), writ denied, 497 So.2d 1002 (La. 1986). Courts cannot award speculative damages. Id., 493 So.2d at 1240. In the present case, although it was undisputed that Sevarg used the pipelines, the record is void of any testimony of the market cost of obtaining a pipeline servitude. Moreover, there is no testimony that the landowners suffered mental anguish as a result of Sevarg's use of this pipeline or that any damages occurred because of Sevarg's use of the pipeline. Therefore we find that the trial court erred in making an award for this item of damages.

TRESPASS DAMAGES
Sevarg contends that even if the trial court did not err in finding that the landowners owned the pipeline, it erred in awarding damages. Sevarg argues that since Rita Ortego, one of the plaintiff landowners, did not testify, there was no proof that she suffered damages. It further argues that the damages to the other landowners, the Wybles, are speculative and not supported by the record.
We first address Rita Ortego's damage award. In reviewing the record, we find that although the original 1960 partition was introduced into evidence, the record is void of any evidence which shows that Lot 3, the lot claimed to be owned by Rita Ortego, was ever transferred by Edward Wyble. It is axiomatic that our review is limited to evidence adduced and admitted in the trial court. Accordingly, since there is no proof before us of Rita Ortego's land ownership, we find that the trial court was manifestly erroneous in awarding her damages.
We now address the damage award made to the other two landowners. In Bell v. Sediment Removers, Inc., 479 So.2d 1078 (La.App. 3rd Cir.1985), writ denied, 481 So.2d 1350 (La.1986), we stated:
"Plaintiff must prove by a preponderance of the evidence the damages caused by the tortfeasor. This burden of proof may be met by either direct or circumstantial evidence. Proof by direct or circumstantial evidence is sufficient to constitute a preponderance when, taking the evidence as a whole, such proof shows that the facts or causation sought to be proved is more probable than not."
Since the trial court made an in globo award, we assume that the trial court intended to prorate the judgment among the plaintiffs. Accordingly, we find that the amount awarded for trespass to Austin and Arthur Wyble is actually two-thirds of $5,000, or $3,333.
We note that the Wybles did not pray for trespass damages in their petition. Nevertheless, we find after carefully examining the record, the pleadings were enlarged because Sevarg did not object to the generalized testimony presented by the Wybles about damages to their property. LSA-C.C.P. Art. 1154.
To constitute a trespass there must be an unlawful physical invasion of the property of another. Patin v. Stockstill, 315 So.2d 868 (La.App. 1st Cir.1975).
*346 In a trespass action, it is encumbent upon plaintiff to show damages based on the result or the consequences of an injury flowing from the act of trespass. A plaintiff who is unable to substantiate his claim for damages in a trespass action by a preponderance of the evidence is due no damages. Mental anguish does not result of necessity from a trespass or the encroachment on one's property; even though it may be compensatory, it must be proven with sufficient evidence. Bell, supra.
We find that the trial court was manifestly erroneous in finding that Sevarg was guilty of trespass. The mineral lease which was assigned to Sevarg provides in pertinent part as follows:
"Lessor ... hereby leases and lets unto Lessee, the exclusive right to enter upon and use the land hereinafter described for the exploration for and production of oil, gas, sulphur and all other minerals together with the use of the surface of the land for all purposes incident to the exploration for and production, ownership, possession, storage and transportation of said minerals (either from said land or acreage pooled therewith), and the right to dispose of salt water, with the right of ingress and egress to and from said lands at all times for such purposes,...." (Emphasis added.)
The record in the case sub judice reflects, without contradiction, that the Wyble tract was unitized with the Courville tract and participates in the production from the Courville well. The fact that the plaintiffs' property is situated within a unit with the Courville property was admitted by Austin Wyble in his testimony. Since Sevarg entered the property of the Wybles for a purpose incident to the production and transportation of minerals from the Courville land with which the Wyble land is pooled, we find that it was lawfully on the property and was not trespassing.
Nonetheless, Sevarg would be responsible for any actual surface damages established by the evidence. After carefully reviewing the record, we find that it is devoid of any evidence, other than pictures reflecting some standing water on the premises. As stated hereinabove, courts can not award speculative damages. Coon, supra. Accordingly, we find that the plaintiffs failed to prove their entitlement to surface damages.
Lastly, Sevarg argued on appeal that the trial court should not have dismissed its reconventional demand against Ortego and the Wybles for damages. In its reconventional demand Sevarg sought damages for expenses it incurred when the plaintiffs refused to allow repair crews onto the land to repair the ruptured pipeline. Again, after carefully reviewing the record, we find no evidentiary basis on which damages, other than speculative damages, could be awarded. Therefore, we find no error in the trial court's dismissal of Sevarg's reconventional demand.
For the foregoing reasons, we affirm the trial court's dismissal of Sevarg Company Inc.'s reconventional demand against Rita Ortego, Arthur Wyble, and Austin Wyble, Jr. We reverse and set aside the trial court's judgment in favor of Rita Ortego, Arthur Wyble, and Austin Wyble, Jr. against Sevarg, and dismiss their claim against Sevarg Company, Inc. with prejudice. Costs of the trial court and this appeal are assessed to Rita Ortego, Arthur Wyble, and Austin Wyble, Jr.
AFFIRMED IN PART; REVERSED IN PART, AND RENDERED.
NOTES
[1] The record does not establish that Coastal is the successor of Colorado Oil and Gas either by change of name, merger or assignment and transfer. Nevertheless, we shall assume for purposes of this opinion that Colorado Oil and Gas and Coastal were one and the same, and that Sevarg is the successor of Coastal.
[2] There is no evidence in the record that Sevarg acquired the interest of Brown-McKenzie and Brown-McKenzie is not a party to this action. However, the absence of Brown-McKenzie as a litigant is not critical to our decision.