485 So.2d 508 (1986)
Thomas GUZZETTA et al.
v.
The TEXAS PIPE LINE COMPANY.
No. 85-C-2258.
Supreme Court of Louisiana.
March 31, 1986.
Concurring Opinion April 1, 1986.
*509 Thomas Guzzetta, Thibodaux, pro se.
Charlene Dittmer, for defendant-respondent.
DIXON, Chief Justice.
Plaintiffs-relators are co-owners in indivision of a tract of land on Bayou Lafourche in Lafourche Parish. In 1955 relators or their ancestors in title granted The Texas Pipe Line Company, defendant-respondent, a pipeline right of way for "the right to lay, construct, operate, maintain, inspect, repair, replace, change the size of, and remove a pipe line" for the transportation of oil, gas, petroleum or other substances. The stated consideration in the servitude agreement for the granting of these rights was $250.00.
Defendant constructed an eight inch pipeline running north to south across the plaintiffs' property for a distance of 1,061.90 feet, buried three feet below ground in low, marshy terrain. Around June of 1982 the defendant discontinued using this portion of pipeline. Plaintiffs asked the defendant to remove the pipeline, or to pay the costs of removal estimated at $12,000.00, and defendant refused.
Plaintiffs filed suit against the pipeline company asking for damages amounting to the costs of removal of the pipeline, which has not been removed as of this date. Both the trial court and the court of appeal determined that plaintiffs had no cause of action.
The court of appeal found that the servitude agreement was still in effect, because the agreement contained no applicable term or resolutory condition, and could only be extinguished by ten years nonuse under C.C. 753. Under the still valid agreement, the court noted that only the pipeline company was granted the right to remove the pipeline at its discretion and that accordingly the plaintiffs had no cause of action. We reverse.
The purpose of an exception of no cause of action is to determine the sufficiency in law of the petition. The exception is triable on the face of the papers, and the facts alleged by the plaintiff in the petition must be accepted as true. C.C.P. 927, Darville v. Texaco, Inc., 447 So.2d 473 (La. 1984); Mayer v. Valentine Sugars, Inc., 444 So.2d 618 (La.1984); Haskins v. Clary, 346 So.2d 193 (La.1977).
The general rule is that the exception of no cause of action must be overruled if the *510 allegations of the petition admit to a reasonable hypothesis that the plaintiff has a cause of action for which any relief may be granted under the law. The exception may only be sustained where the allegations of the petition exclude every reasonable hypothesis that plaintiff has a cause of action under any evidence admissible in the pleadings. Darville v. Texaco, supra at 475.
The allegations of plaintiffs' petition do admit to the reasonable hypothesis that plaintiffs have a cause of action for which relief may be granted under the law. Although the cause of action which the petition does support will not provide plaintiffs with the remedy which they prefer, it may provide some relief in their situation. The plaintiffs' petition does not support a cause of action which would permit a suit to compel removal of the pipeline or payment of costs of removal of the pipeline from their property. But the petition does support a cause of action for a declaratory judgment that the servitude held by defendant has terminated, thus freeing their property from this encumbrance and restoring their full ownership of the land.
The court of appeal determined that the servitude agreement was still valid because it did not contain a term or resolutory condition and thus could only terminate upon expiration of a period of nonuse for ten years under C.C. 753. To the contrary, a resolutory condition was included in the contract and whether or not that resolutory condition was met, causing the termination of the servitude, is a factual determination which is not properly before a court on review of an exception of no cause of action.
The allegations of plaintiffs' petition, liberally construed, indicate the assertion that defendant's servitude had terminated. Plaintiffs allege that defendant "abandoned" the pipeline, which could have triggered the resolutory clause in the contract: that The Texas Pipe Line Company only retained the rights under the agreement "so long as such pipe lines underground equipment or appurtenances thereof are maintained."[1]
Whether or not any "abandonment" of the pipeline or right of way triggered the resolutory clause in the contract, terminating the servitude, is an issue of fact not properly resolved on an exception of no cause of action.
The allegation that the servitude has terminated supports a cause of action for a declaratory judgment that plaintiffs' land is no longer encumbered by this servitude. The allegations of plaintiffs' petition do not support a cause of action for either compelled removal or damages for costs of removal in this case.
Plaintiffs argue that the servitude has terminated, that defendant no longer has the right to keep its pipeline on plaintiffs' property, and that defendant must pay costs of removal of the pipeline since it refused to remove the pipeline on demand.
However, assuming as correct plaintiffs' allegation that the servitude agreement has terminated, in which case the contract between the parties is no longer in effect, Louisiana law provides that ownership of an abandoned pipeline reverts to the owner of the land if the owners refuse to remove it within ninety days of demand. C.C. 493; see also Yiannopoulos, Extinction of Predial Servitudes, 56 Tul.L.Rev. 1285, 1298 n. *511 88 (1982), citing Breaux v. Rimmer & Garrett, Inc., 320 So.2d 214 (La.App. 3d Cir. 1975).
C.C. 493, the applicable code article in this case, provides in part:
"Buildings, other constructions permanently attached to the ground, and plantings made on the land of another with his consent belong to him who made them. They belong to the owner of the ground when they are made without his consent.
When the owner of buildings, other constructions permanently attached to the ground, or plantings no longer has the right to keep them on the land of another, he may remove them subject to his obligation to restore the property to its former condition. If he does not remove them within 90 days after written demand, the owner of the land acquires ownership of the improvements and owes nothing to their former owner."
Comment (b) to C.C. 493 points out that the second paragraph in this article fills a gap in the code, which previously had neglected to specify the rights and obligations between the owner of the improvements and the owner of the ground when their legal relationship terminated.[2] This paragraph may apply when a lease expires, when a predial or personal servitude is extinguished, or when a precarious possessor is given notice to vacate. It gives the owner of the improvements the right to remove them, but if he does not do so ninety days after written demand, the owner of the land acquires ownership of the improvements. It does not give the new owner of the improvements the right to compel removal by the old owner, nor to recover payment for the costs of removal.
Plaintiffs erroneously argued that they stated a cause of action to recover the costs to removal of the pipeline under C.C. 495, which provides that the owner of an immovable to which another attaches or incorporates things that become component parts of the immovable may have them removed at the expense of the person who made them. However, this provision only applies to things that become component parts of an immovable, and other constructions permanently attached to the ground are not component parts of a tract of land when they belong to a person other than the owner of the ground, as here. See C.C. 495 comment (c), C.C. 493 and C.C. 463. Accordingly, C.C. 495 and the remedy it provides are inapplicable to this case. See also Symeonides, Developments in the Law, 1982-1983: Property, 44 La.L.Rev. 505, 522 (1983). Under C.C. 493, the applicable article, plaintiffs' rights are clear, and they have no right to compel removal or costs of removal of the pipeline.
Plaintiffs would have no cause of action to recover the costs of removal of the pipeline even if the court finds, on remand, that the servitude agreement is still in effect. In such a case, defendant having proved that it had not abandoned the pipeline so as to trigger the resolutory condition to maintain the pipeline, but that it had only ceased to use the pipeline, the servitude would remain in effect until the actual abandonment of the pipeline or the expiration of ten years of nonuse under C.C. 753. Upon termination of the servitude for ten years nonuse, C.C. 493 would again apply, preventing plaintiffs from recovering costs of removal or compelling removal. Again, after the failure to remove the pipeline within ninety days of written notice, the ownership of the pipeline would revert to the plaintiffs.
*512 While plaintiffs cannot obtain the relief they prefer under Louisiana law, they are entitled, under the allegations of their petition, to pursue a suit declaring that the servitude has ended. If successful, this suit will at least unencumber their property and restore them to full ownership of their land.[3]
The judgment of the court of appeal sustaining the exception of no cause of action against plaintiffs is reversed, and the case is remanded to the district court for further proceedings; the liability for costs is to await further proceedings.
LEMMON, J., concurs and assigns reasons.
LEMMON, Justice, concurring.
I agree that La.C.C. Art. 493 is more applicable to the present case than La.C.C. Art. 495. However, Article 493 is silent as to the allocation of the cost of removal of constructions permanently attached to the ground, and the court should therefore look to the intention of the contracting parties.
The contract between the parties in the present case is also silent as to the expenses of removal of the pipeline at the termination of the servitude. It is therefore necessary to determine the intent of the parties by implication from the circumstances of the agreement and the conditions generally prevailing at the time.
There is a certain attraction to the idea that parties to a predial servitude generally contemplate that the land will be returned to its original condition at the termination of the servitude. However, the after-the-fact determination of the unexpressed intention of the parties turns on many considerations such as the character of the land at the time of the agreement, the location of the land, the type of construction to be undertaken by the servitude owner, and the effect of the construction on the landowner's ability to use the land at the termination of the servitude.
There is nothing in this case to suggest that any of the parties to the servitude agreement contemplated, at the time of the signing of the agreement, that the pipeline company would ever be expected to remove the pipeline which was to be buried three feet below the surface of the ground in a marshy area. I therefore conclude that plaintiffs are not entitled at the termination of the servitude to require the removal of the pipeline or to recover the cost thereof.
NOTES
[1] The term "abandon" has a specific legal meaning indicating more than mere discontinuation of use. C.C. 3418 provides that a "thing is abandoned when the owner relinquishes possession with the intent to give up ownership." Black's Law Dictionary provides that to abandon is "[t]o desert, surrender, forsake or cede. To relinquish or give up with intent of never again resuming one's right or interest.... To give up absolutely; to forsake entirely; to renounce utterly; to relinquish all connection with or concern in; to desert...."

Plaintiffs' allegation that the pipeline was "abandoned" must be construed in accord with the legal meaning of the word. In other words, plaintiffs are alleging that defendant has given up all rights in relation to the pipeline, and not merely the right to use the pipeline. Under this allegation plaintiffs' argument that the servitude terminated under the terms in the contract must be taken as true for the purpose of ruling on the exception of no cause of action.
[2] Even prior to the legislative correction of this oversight in the Civil Code, at least one court reached in part the result dictated by C.C. 493. In Breaux v. Rimmer & Garrett, supra, the court of appeal found that after extinction of a servitude, accessories such as a pipeline continue to belong to the owner of the accessories. However, if the property is abandoned, the landowner acquires ownership by accession. The court based this decision on former C.C. 3421 (reenacted without substantive change as C.C. 3418) which provides that: "He who finds a thing which is abandoned; that is, which its owner has let [left] with the intention not to keep it any longer, becomes master of it in the same manner as if it had never belonged to anybody."
[3] This decision, of course, does not affect the duties and powers of the Commissioner of Conservation under R.S. 30:4(E)(2) to investigate and force corrective measures when an abandoned pipeline constitutes a hazard to the public's health or safety.