RWATKINS, Judge.
This is a suit by the State of Louisiana, through the Department of Wildlife and Fisheries (State), seeking to compel Anchor Gasoline Corporation (Anchor), the former lessee of a parcel of land now owned by the State, to remove a refinery which it constructed during the term of its lease. Both parties filed motions for summary judgment. From the trial court judgment granting summary judgment in favor of the State, Anchor appeals, urging that the trial court erred in its interpretation of the lease contract in requiring Anchor to remove the refinery and requiring it to pay damages for removal of the refinery.
In 1957, Anchor leased approximately 10 acres of land located in Pointe Coupee Parish from Lillie B. Jumonville and the heirs of E.A. Jumonville. A “gasoline plant” was constructed on the property by Anchor. In 1985, the State purchased the property, subject to Anchor’s lease, as part of a 1500-acre tract for the purpose of establishing the Sherburne Wildlife Management Area. In 1987, Anchor notified concerned parties of its intent not to renew the lease beyond June 30, 1987.
In August of 1988, the State filed suit for declaratory and injunctive relief, which was later converted to an ordinary proceeding to compel Anchor to remove the abandoned refinery and equipment which allegedly had a 60 percent asbestos content. In 1992 both plaintiff and defendant filed motions for summary judgment. A hearing was held in 1994, following which the trial judge rendered judgment in favor of the State, granting its motion for summary judgment and denying Anchor’s motion for summary judgment.
The judgment appealed from does not elaborate on the specific relief granted to plaintiff, but generally grants the State’s motion for summary judgment. That motion sought a judgment as prayed for in plaintiff’s petition, which was as |8follows: judgment establishing the right of the State to have Anchor remove its former facilities and return the property to its prior condition; and, damages in the amount of $1,116,083.24, representing the State’s cost to clean up the site, past rental and future value of the property, or alternatively, an order to defendant to remove its former facilities and return the property to its prior condition together with the posting of bond to ensure same. Thus, contrary to Anchor’s assertion on appeal, it does not appear that the trial court specifically awarded damages, an item that would not be appropriate for disposition by summary judgment.
According to the petition of the State, after vacating the leased premises, Anchor left behind buildings, power lines, sheds, roads, an office complex containing miscellaneous office equipment, pipe racks, pipelines, four butane tanks, two gasoline tanks, three distil *472 late tanks, two kerosene tanks, two absorbers, pumps for absorbers, four engines, a cooling tower, a refrigerator system, one de-ethanizer, a still, five dehydrators, and piping for compressors. The State further alleges that the Department of Environmental Quality ran tests on the equipment and structures, which tests indicate a 60 percent asbestos content. Additionally, the State alleges the structures and equipment contain various other chemicals and substances which pose an immediate and irreparable threat to the health and well-being of the public and of the wildlife and habitat of the area.
We are called upon in this appeal to evaluate the appropriateness of the granting of summary judgment in favor of the State. Appellate courts review summary judgments de novo under the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La.1991).
| ^Summary judgment under LSA-C.C.P. art. 966 is available only when the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to a material fact, and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966; Thompson v. South Central Bell Telephone Company, 411 So.2d 26 (La.1982). Because both parties filed for summary judgment in the instant case, the defendant has conceded that this is an appropriate ease for the rendition of summary judgment.
With these principles in mind, we look first to the contractual agreement which governs the relationship of these parties, the lease agreement entered into between Anchor and the Jumonvilles in 1957, which reads in pertinent part:
Should Lessee not exercise its option to lease said property for the first ten years [sic] optional period, then all fixtures and improvements placed on said property shall remain as the property of Lessors; but if Lessee exercises its option to lease the property for the said first ten year optional period, then at any time thereafter upon the payment of all lease rentals for that period, the Lessee shall have the right to remove all fixtures and improvements placed on said property, which fixtures and improvements shall be owned by Lessee. Likewise at any time after the expiration of said ten year period upon the payment of all rental then due, Lessee shall have the right to remove all fixtures and improvements placed on said property, which fixtures and improvements shall be owned by Lessee. Lessee obligates itself to leave said property in the same condition as upon the execution of this lease. [Emphasis supplied.]
Because the lease actually endured the entire term of the lease with renewals for 30 years, the lessee came to own the improvements made on the property, under the lease terms. The question then becomes whether the right of lessee to remove the improvements is also accompanied by an obligation to remove the improvements, or whether lessee has the choice of abandoning the improvements. The trial court held that this contractual language required Anchor to remove the improvements at the termination of the lease. We affirm.
Recognizing that LSA-C.C. art. 2726 makes the right of a | ..¡lessee to remove improvements subject to the provisions of Louisiana Civil Code articles 493 [2], 493.1[3], 493.2 [4] *473 and 495[5], the trial court, nevertheless, followed the rule that the referenced articles apply only in the absence of juridical acts, such as the instant lease. See LSA-C.C. art. 493, Comments (c); Wilson Oil Co. Inc. v. Central Oil & Supply Corp., 557 So.2d 753 (La.App.2d Cir.), writs denied, 563 So.2d 885, 886 (La.1990). The trial court then considered the express language of the lease in the instant case and held that the former lessee had an obligation to_[^ leave said property in the same condition as upon the execution of this lease.” Thus, in interpreting the lessee’s obligation to restore the premises as an obh-gation to remove the fixtures and improvements,” the trial court rejected the lessee’s contention that the obligation conflicted with its right to remove them.
We, also, see no conflict between the two provisions. One deals with the lessee’s obligation, the other with the lessee’s right; the two are not synonymous. Because we see no conflict, we do not think the lease is ambiguous.[6]
Furthermore, we note that LSA-C.C. art. 495 provides the owner of the immovable the option of requiring the removal, at the expense of the person who made the “improvements,” of things that become component parts of the immovable under Articles 465 and 466. Although the equipment and/or buildings in the instant case may not qualify as component parts under Articles 465 and 466, we view the lease between the parties as tantamount to Article 495’s provision, that the lessee must pay for the removal if the lessor demands same.
We find further support for our conclusion that the trial court was correct in the instant case in a previous case by this court, Britt Builders, Inc. v. Brister, 618 So.2d 899 (La. App. 1st Cir.1993), wherein we applied common sense to our interpretation of LSA-C.C. art. 496 when a landowner found herself burdened with an unwanted slab on her property. Article 496 provides that when constructions are made by a possessor in g0od ⅛⅛, the owner of the immovable may no^ demand their demolitions and removal, owner is bound to keep the constructions and bjs option, to pay to the possessor efther ⅛6 cogt of ⅛6 materiaJs and laboi. or emTent ⅛ Qr ⅛0 enhanced value immovable. lu Britt, we stated:
[T]his Court believes that the redactors of our Civil Code envisioned application of Article 496 when the owner of the immovable would be unjustly enriched by the efforts of a good faith possessor. They did not intend that the owner be burdened with partial constructions and unwanted works on his property that actually diminished its value.
618 So.2d at 902.
Finally, we find lessee’s reliance on Guzzetta v. Texas Pipe Line Co., 485 So.2d 508 (La.1986) to be unwarranted. That ease is factually distinguishable because it involved a pipeline buried in swampland and a servitude that did not constitute a juridical act such as the instant lease. Thus, the Louisiana Supreme Court applied Article 493 to hold that the landowner could not demand removal at the defendant’s cost. References in that ease and in the comments to Article 493 concerning the applicability of Article 493 to leases are couched in terms of “may” and not “shall.”
*474 Accordingly, we hold that the State is entitled to judgment as a matter of law. However, because the trial court’s general grant of summary judgment was not specific, we amend the judgment to provide that the State is entitled to judgment, as a matter of law, ordering the defendant to remove its former facilities and to return the property to its prior condition. We know of no authority which would justify requiring the defendant to post bond to ensure compliance with this court’s order. The State will have at its disposal all legal procedures and remedies for enforcement of its judgment.
We cast defendant for all costs of this appeal.
JUDGMENT AMENDED, AND AS AMENDED, AFFIRMED.
TANNER, J. Pro Tem., dissents and assigns reasons.

.LSA-C.C. art. 493 provides in pertinent part:
Buildings, other constructions permanently attached to the ground, and plantings made on the land of another with his consent belong to him who made them. They belong to the owner of the ground when they are made without his consent.
When the owner of buildings, other constructions permanently attached to the ground, or plantings no longer has the right to keep them on the land of another, he may remove them subject to his obligation to restore the property to its former condition.
If he does not remove them within 90 days after written demand, the owner of the land acquires ownership of the improvements and owes nothing to their former owner.

. LSA-C.C. art. 493.1 provides:
"Things incorporated in or attached to an immovable so as to become its component part under Articles 465 and 466 belong to the owner of the immovable.”

. LSA-C.C. art 493.2 provides:
"One who has lost the ownership of a thing to the owner of an immovable may have a claim *473 against him or against a third person in accordance with the following provisions.”

. LSA-C.C. art. 495 provides in pertinent part:
One who incorporates in, or attaches to, the immovable of another, with his consent, things that become component parts of the immovable under Articles 465 and 466, may, in the absence of other provisions of law or juridical acts, remove them subject to his obligation of restoring the property to its former condition. If he does not remove them after demand, the owner of the immovable may have them removed at the expense of the person who made them or elect to keep them and pay, at his option, the current value of the materials and of the workmanship or the enhanced value of the immovable.

. Interpretation of a contract is the determination of the common intent of the parties. LSA-C.C. art. 2045. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. LSA-C.C. art. 2046. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. LSA-C.C. art. 2050.