|2FOIL, Judge.
This appeal challenges a trial court’s determination which upheld a Board of Tax Appeals’ ruling declaring various transactions between a taxpayer and two oil refineries were not “sales” for the purpose of ascertaining the taxpayer’s Louisiana corporation income and franchise tax liability. After a thorough review of the record, we affirm.
FACTUAL AND PROCEDURAL BACKGROUND
The facts forming the basis for the instant appeal are undisputed; and most were stipulated by the parties. Vista Chemical Company manufactures a product , known as Nalky-lene, which is used to make detergents and other cleaners. A substance called N-Paraffin, which is found in kerosene, is used to manufacture Nalkylene. The N-Paraffin substance in kerosene accounts for approximately 18% of its volume. When the N-Paraffin is removed from kerosene, the end product is called Molex Raffinate, which is a high grade kerosene utilized as jet fuel.
Vista was formed in 1984, and in that year, it purchased a facility from Conoco formerly utilized by Conoco to extract N-Paraffin from kerosene. Vista also entered into two contracts with Conoco called the “Kerosene Sales Agreement” and the “Molex Raffinate Purchase Agreement.” Under the terms of the first contract, Vista is required to purchase a certain amount of kerosene from Conoco each month, provided that the kerosene has the appropriate N-Paraffin content necessary for Vista to produce its product. The contract requires Vista to pay “Platt’s Prices of Jet Kero,”[1] for the kerosene purchased from Conoco. Under the terms of the Molex Raffinate Agreement, Conoco must purchase all Molex Raffinate produced by Vista from the kerosene supplied to Vista by Conoco at a rate of “Platt’s Prices of Jet Kero” for the first 6,820 barrels of the Molex Raffinate delivered and “Platt’s Prices of Jet Kero” less $.0005 for any Molex Raffinate exceeding that amount.
IgAlso in 1984, Vista entered into a similar arrangement with another oil refinery, Citgo Petroleum Corporation, entitled’ “Kerosene and Jet Fuel Buy Sell Agreement.” Under this agreement, Citgo agreed to sell Vista kerosene if Vista sells Citgo Molex Raffinate. Vista pays Citgo “Platt’s Prices of Jet Kero” plus a premium, depending on the sulphur content, for the kerosene, while Citgo pays Vista “Platt’s Prices of Jet Kero” for the resulting Molex Raffinate.
*700 The record shows that Vista also purchases kerosene from third parties, and also sells Molex Raffinate to parties other than Citgo and Conoco. These sales account for approximately .03% of all of Vista’s sales. Vista treats the sale of Molex Raffinate to third parties as sales and includes these sales in its total sales factor for tax liability purposes. However, for purposes of federal and Louisiana taxes, Vista does not include the amounts received from Conoco and Citgo for the Molex Raffinate pursuant to the contractual agreements as sales; rather, it treats these amounts as a reduction of the cost of sales of Nalkylene.
The parties stipulated that in 1984, Vista paid Conoco and Citgo $36,388,825 for kerosene and received $28,027,018 for the Molex Raffinate. In 1985, Vista paid the companies $148,367,205 for kerosene, and received $114,606,275 for Molex Raffinate. In 1986, Vista paid $127,760,951 for kerosene, while it received $97,017,098 for Molex Raffinate.
Vista was audited by the Department for corporate income taxes for the years of 1984, 1985 and 1986. As a result of the audit, Vista was assessed with additional corporate income taxes and penalties totalling $15,-301.66, along with an additional corporation franchise tax assessment. The additional taxes arose from the Department’s attempt to include the transfer of Molex Raffinate from Vista to Conoco and Citgo as sales for the purpose of ascertaining Vista’s apportion-able Louisiana income.
Vista appealed the assessment to the Board of Tax Appeals. The Board of Tax Appeals ruled in favor of Vista, vacating the tax assessment. The Department appealed to the trial court, which ^affirmed the decision of the Board of Tax Appeals. This appeal followed.
VALIDITY OF THE ASSESSMENT
Because Vista is a multi-state corporation, in order to determine its Louisiana corporate and franchise tax liability, Vista’s sales activity must be apportioned. Various ratios are utilized in arriving at a multi-state taxpayer’s apportionable Louisiana income.
The assessments at issue were made by the Department pursuant to La.R.S. 47:287.95 and 47:606, which set forth the method of determining the Louisiana apportionment percentage for corporation and franchise taxes, respectively. Under both provisions, the “sales factor” ratio used in computing tax liability looks to the ratio of net sales made in the regular course of business and other apportionable income attributable to the State of Louisiana to the total net sales made in the regular course of business and other revenue of the taxpayer.
The Department argues that the transfer of Molex Raffinate to Conoco and Citgo should be considered a sale and therefore included in Vista’s apportionable Louisiana income because the transaction satisfies all of the essential elements of a sale under Louisiana law. La.Civ.Code art. 2439 provides for three elements of a sale: thing, price and consent. The Department argues that under the clear and unambiguous language of the contract, all of these elements are met, for there is an agreement between the parties for Vista to sell Molex Raffinate to Conoco and Citgo at an agreed to price. Also, the Department points out that the contracts transfer title and risk of loss to Vista once the kerosene is delivered to it. Thus, they urge, since Vista becomes the owner of the kerosene, the subsequent transfer by Vista of the Molex Raffinate is a separate and distinct sale which should be included in the apportionment factor.
We disagree. In determining a taxpayer’s liability, the substance .of an agreement is controlling. Monsanto Co. v. St. Charles Parish School Board, 94-2145 (La. 22/20/95), 650 So.2d 753,15756; Cajun Contractors, Inc. v. State, Department of Revenue & Taxation, 515 So.2d 625 (La.App. 1st Cir.1987). Although it may be true that the Vista-Conoco and Vista-Citgo contracts contain the essential elements of a sale under Louisiana law, it is evident that the true substance of those agreements is the purchase of N-Paraffin by Vista. Vista is contractually obligated to return the Molex Raffinate to Conoco and Cit-go after it has removed the N-Paraffin content from the kerosene supplied to it by Conoco and Citgo. Thus, although the risk *701 of loss of the kerosene is visited upon Vista, it is not free to dispose of the Molex Raffi-nate as it chooses. This lack of freedom to treat the kerosene as an owner distinguishes the nature of the arrangements from a true sales agreement. Contrary to the Department’s assertions, the purchase of kerosene by Vista from Conoco and Citgo and the sale of Molex Raffinate to Conoco and Citgo by Vista are not separate and independent transactions, but are integral parts of a single contractual arrangement between the parties.
The transactions at issue merely reflect the reality that to manufacture its product, Vista must purchase N-Paraffin. N-Paraf-fln must be obtained from kerosene. Because Vista has the capability of removing the N-Paraffin, the oil companies agreed to supply Vista with kerosene containing the N-Paraffin in return for the Molex Raffinate. The price Vista pays for the kerosene is greater than the price it receives for the higher grade Molex Raffinate. The difference in the two prices is the cost Vista incurs in purchasing N-Paraffin to manufacture Nalkylene.
When the true substance of the contractual relationships is scrutinized, it is evident that Vista is not selling Molex Raffinate to the oil refineries, but is rather returning the fuel to them after removing the N-Paraffin content. Therefore, the return of Molex Raffinate to the chemical refineries is not a “sale” in Vista’s regular course of business that is subject to inclusion in the sale apportionment factor.
I (¡CONCLUSION
Accordingly, we hold that the Board of Tax Appeals and the trial court correctly reversed the Department’s Assessment. All costs of this appeal, in the amount of $256.91, are cast to the Department.
AFFIRMED.

. "Platt’s Prices” are the estimated prices for refined petroleum products as published in Platt’s Oilgram Price Report.