808 So.2d 873 (2002)
MARATHON PIPE LINE COMPANY
v.
Brett CRAWFORD, Secretary of the Department of Revenue and Taxation.
No. 2000 CA 2753.
Court of Appeal of Louisiana, First Circuit.
February 15, 2002.
*874 Judy Y. Barrasso, New Orleans, LA, Steven R. Marcuse, Houston, TX, for plaintiff/appellant, Marathon Pipe Line Company.
Otha "Curtis" Nelson, Jr., Baton Rouge, LA, for defendant/appellee, Brett Crawford, Secretary of the Department of Revenue and Taxation.
BEFORE: WHIPPLE, FOGG and GUIDRY, JJ.
WHIPPLE, Judge.
The Louisiana Department of Revenue and Taxation ("the Department") challenges a judgment of the district court reversing the decision of the Louisiana Board of Tax Appeals, based upon the court's finding that income generated from "renting" space in a pipeline pursuant to certain lease agreements is classified as allocable income for corporate income tax purposes and should be taxed as such accordingly.[1] For the following reasons, we *875 reverse the judgment of the district court and reinstate the decision of the Louisiana Board of Tax Appeals.

FACTS AND PROCEDURAL HISTORY
The record and the facts stipulated by the parties reflect the following. Marathon Pipe Line Company ("Marathon") operates 5,300 miles of pipeline in thirteen states transporting both crude oil and refined products as a regulated carrier subject to the jurisdiction of the Federal Energy Regulatory Commission ("FERC"). And, as such, Marathon offers pipeline transportation services to the general public at the FERC published tariff rate. Aside from its primary business, Marathon rents available pipeline space and tank facilities to other carriers in related ventures.
In 1983, Marathon entered into a lease agreement with Sohio Pipe Line Company ("Sohio") whereby Marathon leased an "Initial Base Space" in its pipeline sufficient to transport 115,000 barrels of crude oil per day for a three month period, thereafter increasing the "Base Space" to allow for transportation of 120,000 barrels of crude oil per day. In 1988, Marathon entered into a similar lease agreement with Ashland Pipe Line Company ("Ashland"), leasing a space sufficient to transport a maximum of 40,000 barrels of crude oil per day. Both agreements involved the use of a portion of Marathon's pipeline beginning in Patoka Township, Marion County, Illinois and ending in Shawnee Township, Allen County, Ohio with connections to other destinations in Illinois and Indiana in between.
The specific duties of each party to these leases are spelled out at length in the lease agreements. Essentially, pursuant to these leases, Sohio and Ashland were responsible for marketing their allotted capacity of space in the pipeline for lease to other shippers, filing the applicable tariffs for any marketed space, and collecting all associated revenues. Sohio and Ashland were charged a flat rate[2] each month for the pipeline capacity at their disposal, regardless of whether the space was utilized, and an operating expense[3] based on the number of barrels of crude oil that Marathon actually moved through the pipeline. In return, Marathon was responsible for maintaining the overall pipeline, operating the natural gas compressors used to pump the oil through the pipeline, and conducting any necessary repairs of the pipeline. Marathon also operated a computerized communication system to control the movement of oil through the pipeline.
In 1988 and 1989, Marathon designated the income generated from these two leases as "rental" income on its corporate income tax returns, and accordingly allocated the income to Ohio, Indiana, and Illinois. *876 On audit, the Department concluded the income was pipeline income rather than rental income and apportioned some of the income to Louisiana, thereby assessing an increase of Marathon's tax liability by $26,799.00 for 1988 and $37,242.00 for 1989. In response to the increase, Marathon filed a "Protest of `Notice of Assessment'" with the State of Louisiana Board of Tax Appeals, and a hearing was held on May 4, 1999.
In upholding the assessments, the Board of Tax Appeals found the Department properly classified the rental income as income derived from the business of transportation by pipeline as provided by LSA-R.S. 47:287.95(B), noting in its written reasons for judgment that:
Marathon does not contend that this is a lease of corporeal movable property. The pipeline is an immovable; it is buried in the ground. The agreement entitled "Lease Agreement" does not purport to lease to Ashland or Sohio the pipeline itself, [but] the "Pipeline System" as it is referred to in the agreement. The agreement in paragraph 1 leases "Base Space" that is sufficient to transport a certain volume of crude oil. There is no lease of an immovable.... Marathon does not lease the immovable pipeline. By the terms of the agreement Marathon essentially gives to Ashland and Sohio the right to transport a certain volume of its product during a certain period of time for a certain price. The agreement most closely resembles a sale of a service. When drafting LSA-R.S. 47:287.95 B. and LSA-R.S. 47:287.95 F(5) the legislature of Louisiana considered income from pipeline transportation and assumed that it was apportionable income and specified a mean to compute the tax.
A judgment dated December 10, 1999, awarded the increased tax amounts plus interest in favor of the Department.
Marathon then filed a petition in the Nineteenth Judicial District Court for judicial review of the Board's decision. By judgment dated September 14, 2000, the Nineteenth Judicial District Court reversed the decision of the Board of Tax Appeals, finding that "rent paid for leasing of pipeline space ... constitutes rent from immovable property under La.R.S. 47:287.92.B.(1), and that pursuant to La. R.S. 47:287.93.A.(1) the rental income from immovable property is allocable to the state where the property is located at the time the income is derived." Noting its concerns with constitutional questions when "taxing something that doesn't even enter our state domain," the district court reversed the Board and rendered judgment in favor of Marathon.[4]
The Department appeals the judgment of the Nineteenth Judicial District Court, asserting the following assignments of error:
1. The Nineteenth Judicial District Court erred when it set aside the Board's factual findings that Marathon was providing a transportation service to Ashland and Sohio.
2. The Nineteenth Judicial District Court erred when it determined that Marathon was renting a portion of a pipeline and was not transporting oil across interstate lines, which would make it apportionable.
3. The Nineteenth Judicial District Court erred when it determined Marathon was leasing an immovable *877 that is taxable under LSA-R.S. 47:287.92(B)(1) as allocable income.

STANDARD OF REVIEW
By statutory and constitutional mandate, the Nineteenth Judicial District Court is vested with the power of review of decisions of the Board of Tax Appeals. La. Const. Art. V, § 16; LSA-R.S. 47:1434-35. Thereafter, the ruling of the district court is subject to appellate review by suspensive appeal to this Court, in the exercise of appellate jurisdiction over civil matters. La. Const. Art. V, § 10; LSA-R.S. 47:1435.
Judicial review of a decision of the Board is rendered upon the record as made before the Board and is limited to facts on the record and questions of law. The Board's findings of fact should be accepted where there is substantial evidence in the record to support them and should not be set aside unless they are manifestly erroneous in view of the evidence on the entire record. St. Pierre's Fabrication and Welding, Inc. v. McNamara, 495 So.2d 1295, 1298 (La.1986); see also LSA-R.S. 47:1434. With regard to questions of law, the judgment of the Board should be affirmed if the Board has correctly applied the law and has adhered to the correct procedural standards. Secretary, Department of Revenue v. Calcasieu Refining Company, XXXX-XXXX, p. 4 (La.App. 1st Cir. 9/28/01), 809 So.2d 1023, 1026.

DISCUSSION
Essentially, the dispute to be resolved herein is the statutory method by which revenue generated from such leases should be taxed. Marathon contends that the revenue is merely "rent" from an immovable and should be treated for tax purposes as allocable income (and thus taxed in the state where the pipeline is physically located) pursuant to LSA-R.S. 47:287.92 B(1). Contrawise, the Department contends that Marathon provided pipeline transportation services and, notably, received a fee for those services in addition to the flat rental fee. Therefore, the Department asserts, the revenue is apportionable income, taxable in Louisiana pursuant to LSA-R.S. 47:287.92 C and LSA-R.S. 47:287.95 B and F.

Leases for Services vs. Leases for Space

(Assignments of Error Nos. 1 and 2)
The Department's first two assignments of error challenge the district court's refusal to recognize the true nature of the leases. The issue is whether, pursuant to the leases, Marathon was providing a transportation service for Sohio and Ashland by transporting crude oil across state lines or merely renting a portion of pipeline space to Sohio and Ashland. In these assignments, the Department contends that the district court manifestly erred in its characterization of the lease arrangement and in setting aside the Board of Tax Appeals' factual findings, which are supported by the record.
The assessments at issue were made by the Department pursuant to LSA-R.S. 47:287.92 C and LSA-R.S. 47:287.95 B and F, which set forth the method and formula for determining the Louisiana apportionment percentage for pipeline transportation income. Louisiana Revised Statutes 47:287.95 B provides:
B. Pipeline transportation. The Louisiana apportionment percent of any taxpayer whose net apportionable income is derived primarily from the business of transportation by pipeline shall be computed by means of the ratios provided in R.S. 47:287.95(F).
Section F of LSA-R.S. 47:287.95 provides the formula for determining the apportionable *878 percentage of taxation for pipeline transportation income as follows:
F. (1) Manufacturing, merchandising, and other business. Except as provided in this Subsection, the Louisiana apportionment percent of any taxpayer whose net apportionable income is derived primarily from the business of transportation by pipeline or from any business not included in Subsections A through E of this Section shall be the arithmetical average of three ratios, as follows:
(a) The ratio of the value of the immovable and corporeal movable property owned by the taxpayer and located in Louisiana to the value of all immovable and corporeal movable property owned by the taxpayer and used in the production of the net apportionable income.
(b) The ratio of the amount paid by the taxpayer for salaries, wages, and other compensation for personal services rendered in this state to the total amount paid by the taxpayer for salaries, wages, and other compensation for personal services in connection with the production of net apportionable income.
(c) The ratio of net sales made in the regular course of business and other gross apportionable income attributable to this state to the total net sales made in the regular course of business and other gross apportionable income of the taxpayer.
On appeal, the Department first contends that the Board of Tax Appeals correctly characterized the income earned from Sohio and Ashland under the terms of the lease as "income derived from the business of transportation by pipeline as provided by La.R.S. 47:287.95(B)." The Department asserts that, as shown in the stipulated facts and the evidence presented in the proceedings before the Board, Marathon's primary business is the transportation of crude oil and refined products through its pipeline.
The Department notes that the lease agreements, by their very terms, reveal that Marathon was doing more than simply renting space. The Department contends that the agreements clearly require Marathon to ensure that a specific amount of space be available within its pipeline system to transport products for Sohio and Ashland. Further, the Department notes that the lease agreements provide for Marathon to perform or cause to be performed at its sole expense all operating functions and maintenance necessary to keep the pipeline in good operating order. Arguing that Louisiana tax laws are patterned on federal law and that Louisiana courts should look to federal jurisprudence, the Department asserts that such lease payments do not constitute rent when, as here, "significant services" are rendered in connection with the payments. Finally, the Department notes that the operating expense as provided for in the lease agreements is for the additional service of transporting the product by Marathon for Sohio and Ashland, and that this additional service, as provided by Marathon herein, makes the activity taxable as pipeline transportation under Louisiana corporate income tax laws.
Marathon counters that "maintenance" of the pipeline alone is not sufficient to constitute a sale of a service or "significant services." As further support, Marathon notes that Sohio and Ashland are responsible for marketing the space leased from Marathon and for the collection of all necessary tariffs upon utilization of the space. As "indisputable proof" that payment to Marathon was for leased pipeline space and not for services, Marathon notes that the rental payments were due and made regardless of whether the space was used.
*879 In order to determine the true nature of the relationship between the parties, we must look to the substance of the leases. As noted by the Louisiana Supreme Court in Monsanto Company v. St. Charles Parish School Board, 94-2145, p. 5 (La.2/20/95), 650 So.2d 753, 756, the substance of a contract, and not the form, is controlling for the determination of tax liability. See also Slaughter v. Vista Chemical Company, 95-2167, p. 4 (La. App. 1st Cir. 5/10/96), 673 So.2d 698, 700, writ denied, 96-1427 (La.9/13/96), 679 So.2d 109. Indeed, the taxpayer cannot defeat collection of taxes by either the wording, form, or label of a contract. McNamara v. Electrode Corporation, 418 So.2d 652, 662 (La.App. 1st Cir.), writ denied, 420 So.2d 986 (La.1982).
The lease agreements at issue provide that Marathon will lease specified "space" in the "Pipeline System" to be "utilized solely for the transportation of crude oil." The Ashland Lease Agreement delineates the leased property as a portion of Marathon's pipeline system beginning at Patoka Township, Marion County, Illinois, and proceeding easterly a distance of approximately 300 miles to Shawnee Township, Allen County, Ohio. The Sohio Lease Agreement delineates the leased segments of Marathon's pipeline system from Patoka Township, Marion County, Illinois, proceeding easterly approximately 300 miles to Shawnee Township, Allen County, Ohio, from Patoka, Illinois to Martinsville, Illinois, from Martinsville, Illinois to Lebanon, Indiana, and from Lebanon, Indiana to Lima, Ohio.
The leases further provide for payment by the lessees of a fixed amount per year for rent plus a per-barrel fee for every barrel of crude oil moved through the pipeline, referred to in the leases as "Operating Expense Rent" and "Additional Rent." The leases also contain specific, detailed provisions for calculating the escalation of such "Additional Rent" and "Operating Expense Rent."[5]
*880 Moreover, the lease agreements further obligate Marathon to perform, at its sole expense, all operating functions and any and all maintenance and repair necessary to keep the pipeline system in safe operating order and good condition. The leases contain a litany of provisions and conditions for the abatement or proration of the "Fixed Rent" and "Operating Expense Rent" in the event of shutdown of the pipeline system and specifically state "that Lessee's lease space as provided in this Lease Agreement does not entitle Lessee to any voice in the management, method of operation, or maintenance and repair of the Lessor's Pipeline System." These rights of control, operation, and management of the pipeline system are reserved to Marathon.
Marathon is responsible for scheduling all shipments within the pipeline system and Sohio's and Ashland's shippers are obligated under the lease to receive their batch deliveries according to monthly schedules at Marathon's Lima, Ohio metering manifolds, under the supervision of Marathon's representatives, at times and hourly flow rates specified by Marathon. Further, the leases afford Sohio and Ashland a monthly scheduling allowance whereby the total barrels of crude oil shipped by them each month is permitted to exceed, by a fixed number of barrels per day, the total quantity of "lease space" elected for a particular month. Under the lease, Marathon is further obligated to provide a valve and flange on its metering manifold at Lima, Ohio to permit Sohio and Ashland to connect in to its system. Also, Sohio and Ashland are not permitted to make any additional connections into or out of Marathon's pipeline, other than at Patoka, Illinois, without the written consent of Marathon. Thus, by their very terms, the leases clearly contemplate the provision of substantial and related transport services by Marathon in return for revenue.
Kenneth Hauck, the controller for Marathon Pipe Line Company, candidly testified that Marathon's primary business is the transportation of both crude oil and refined products. Nonetheless, he claimed that these contracts should be treated as rentals, as Marathon rents "available space" in both its tank facilities and pipeline. Noting that Marathon enters agreements to rent free-standing tank facilities for the storage of crude oil or products, he opined that renting space in a tank and renting space in the pipeline is essentially the same. We disagree.
At a minimum, the per-gallon fee charged by Marathon under the lease for every gallon of oil moved by Marathon through its pipeline is clearly a fee for operating a "service." Absent this "service" by Marathon, Sohio and Ashland would be unable to accomplish their goal of transportation of marketed products. Also, Marathon is not obligated to deliver the identical crude petroleum received, but is only required to furnish a similar grade. Thus, the transportation of oil through a pipeline is readily distinguishable on this basis alone from the storage of oil in a free-standing storage tank facility. Importantly, the parties do not dispute that *881 Marathon's net apportionable income is derived primarily from the transportation by pipeline. See LSA-R.S. 47:287.95. Clearly, the lease agreements between Marathon and Sohio and Ashland contemplate the transportation of crude oil and other refined products, the taxation of which is specifically provided for in LSA-R.S. 47:287.95.
Additionally, although Sohio and Ashland re-market their leased or reserved "space" in the pipeline to various shippers and collect the tariffs for barrels of crude oil transported from those shippers, neither Sohio nor Ashland transport oil. Instead, the oil in the specified capacity is transported through the pipeline system by Marathon. Marathon is obligated to accept a certain amount of oil in the pipeline at a certain point on behalf of Sohio and Ashland (or their clients) and is required to subsequently furnish that amount at another point on the pipeline at another point. Under the lease, Marathon is not required to furnish (and does not guarantee) that the oil Sohio and Ashland take out of the common stream will be the very oil originally placed in the pipeline by Sohio and Ashland. Thus, contrary to Marathon's assertions, the oil is not merely being "stored" in a rental of available space in a pipeline as would occur in a situation involving storage in a tank facility. Instead, the lease provides for oil attributable to Sohio and Ashland to be transported from one destination to another. Indeed, as the leases demonstrate, the purpose of leasing "space" in the pipeline is to allow for the transportation of crude oil or refined products from one destination to another. The parties do not dispute that this is an important consideration in undertaking such lease arrangements and, in fact, the charge for this contemplated transportation service is addressed at length in the lease agreements.
Terri Ducote, a revenue audit reviewer employed by the Department, reviewed the lease agreements herein and similarly determined that Marathon was providing a service, "like any typical pipeline company." She opined that the income generated from the leases should be treated as apportionable income in accordance with LSA-R.S. 47:287.95. She noted that although Marathon claimed it was earning these revenues from renting capacity or space to these companies, it was also providing a taxable service, and was not merely renting an immovable. Ducote testified that the only way the income generated from the lease agreements could be classified as allocable income pursuant to LSA-R.S. 47:287.92 was if the revenues generated under the lease were merely rental revenues from immovable or corporeal movable property, circumstances that do not exist herein. Thus, she explained, the Department concluded that the lease of pipeline capacity or space would not fall into either the immovable or corporeal movable categories.
Considering all of these factors, and applying the principle that the substance and not the form of a contract prevails, we likewise conclude that the lease agreements clearly obligated Marathon to provide essential services to Sohio and Ashland, as needed to transport crude oil through Marathon's pipeline. Considering the language of the leases alone, the Board of Tax Appeals correctly determined that the income generated and received by Marathon pursuant to the leases was not mere "rental" income (as would be governed, for tax purposes, by LSA-R.S. 47:287.92 B(1)). As the Board of Tax Appeals correctly reasoned, the income generated by providing these various services in accordance with the terms of the leases must be characterized as apportionable income and, accordingly, is subject to the tax provisions and formula set forth in LSA-R.S. *882 47:287.92 C and LSA-R.S. 47:287.95 B and F. The trial court erred in reversing the decision of the Board.

Movable vs. Immovable

(Assignment of Error No. 3)
In the Department's remaining assignment of error, it contends that the district court erred both in determining that the transactions were leases of an immovable, and in finding that the revenues at issue were non-taxable, allocable income, generated outside the State of Louisiana.
Louisiana Revised Statutes 47:287.92 entitled, "Segregation of items of gross income," provides as follows:
A. All items of gross income, not otherwise exempt, shall be segregated into two general classes designated as allocable income and apportionable income.
B. Allocable income. The class of gross income to be designated as "allocable income" shall include only the following:
(1) Rents and royalties from immovable or corporeal movable property.
(2) Royalties or similar revenue from the use of patents, trademarks, copyrights, secret processes, and other similar intangible rights.
(3) Income from estates, trusts, and partnerships.
(4) Income from construction, repair, or other similar services.
C. Apportionable income. The class of income to be designated as "apportionable income" shall include all items of gross income which are not properly includable in allocable income as defined in this Section.
Marathon contends that the pipeline is an immovable, and argues that the "rent" generated from the lease of its immovable, i.e., the pipeline, should be designated as allocable income pursuant to LSA-R.S. 47:287.92 B(1) and taxed accordingly. Thus, as allocable income, Marathon contends that the "rent" should be allocated to the state where the property was located at the time the income was derived, pursuant to the following provisions of LSA-R.S. 47:287.93:
A. Allocation of items of gross allocable income. Items of gross allocable income or loss shall be allocated directly to the states within which such items of income are earned or derived, as follows:
(1) Rents and royalties from immovable or corporeal movable property shall be allocated to the state where such property is located at the time the income is derived.
Relying on these statutes, Marathon asserts that Louisiana cannot tax such allocable income earned outside the state.
While agreeing that the pipeline was an immovable, the Board noted that the lease agreements do not involve the lease of the pipeline alone, but, rather, the "Pipeline System," which the Board concluded was not an immovable. Considering the lease agreements and Marathon's responsibilities as listed therein, the Board reasoned that the "Pipeline System" encompasses the actual pipeline and other various components controlled by Marathon as needed to operate the pipeline and transport the oil through its pipeline, an arrangement involving more than the physical pipeline. The Board then concluded that LSA-R.S. 47:287.92 B(1) was inapplicable and did not govern the transactions and income at issue herein.
For the reasons stated above, and without reaching the issue of whether the pipeline is a movable or an immovable, we agree. Thus, we pretermit determination *883 of the issue raised in this assignment of error.[6]

CONCLUSION
After a thorough review of the entire record herein, we are unable to say that the Board was manifestly erroneous in concluding that the income at issue was generated through lease agreements that "most closely" resemble the sale of a service. On review, considering the record herein and the lease agreements at issue, we find no manifest error in the factual findings of the Board or in its application of law to these findings. Thus, we conclude the district court erred in granting the petition for judicial review and in reversing the decision of the Board.
For the above and foregoing reasons, the September 14, 2000 judgment of the district court is reversed and the December 10, 1999 decision of the State of Louisiana Board of Tax Appeals is reinstated. Costs in the amount of $944.82 are assessed against plaintiff/appellee, Marathon Pipe Line Company.
REVERSED AND RENDERED.
NOTES
[1] Under Louisiana corporate tax law, all corporate income is segregated into either "apportionable" or "allocable" income. LSA-R.S. 47:287.92. Classification determines the method of taxation for such income. "Allocable" income is allocated for tax purposes directly to the state where the income is earned or derived, while "apportionable" income is subject to taxation in Louisiana based on an apportionment percentage regardless of where such income is derived. LSA-R.S. 47:287.93-94. Therefore, Louisiana only taxes allocable income if earned in Louisiana, whereas Louisiana taxes a percentage of all apportionable income without regard to its geographic source. Apportionable income is the default category, inasmuch as it includes all items of gross income not specifically included in allocable income. LSA-R.S. 47:287.92(C); Dow Hydrocarbons & Resources v. Kennedy, 96-2471, p. 2 (La.5/20/97), 694 So.2d 215, 216.
[2] The Sohio and Ashland leases refer to this flat rate as "Fixed Rent" and "Basic Rent," respectively.
[3] The Sohio lease refers to this operating expense as "Operating Expense Rent" and the Ashland lease uses the term "Additional Rent."
[4] Although Marathon reiterates the district court's comments and alluded to constitutional issues in brief and at oral argument, we note that Marathon did not challenge the constitutionality of the Louisiana's codified corporate taxing scheme in general or LSA-R.S. 47:287.95, in particular, in the prior proceedings.
[5] The Ashland lease agreement provides for recalculation of the "Additional Rent" every October to reflect increases or decreases in utility rates, as follows:

LESSOR shall determine the power cost per barrel-mile on its crude oil system extending from Patoka to Robinson, Patoka to Martinsville, Martinsville to Lebanon, Lebanon to Rock Island and Lebanon to Lima, using the power bills and barrel-mile figure for August of the current year. The barrel-mile cost will then be multiplied by a factor of 299.95 representing the mileage from Patoka to Lima, the product representing the power costs of moving one barrel of oil from Patoka to Lima. This product is the new Additional Rent which shall be effective on October 1 of the current year and remain so for the succeeding 12 month period.
Similarly, the Sohio lease agreement provides for escalation of the "Operating Expense Rent" in the following clause:
5. OPERATING EXPENSE RENT AND ESCALATION. (a) The "Operating Expense Rent" shall be determined each calendar month during the term of this Lease Agreement by multiplying the number of days in each such month, times the rate of 5 cents per barrel of crude oil, times the total barrels per day of Lessee's leased space elected pursuant to Section 1 of this Lease Agreement for such month. The resultant Operating Expense Rent for each month shall be stated in Lessor's invoice to Lessee and may be billed in advance of shipments after the 25th day of the month preceding such shipments.
(b) The monthly Operating Expense Rent shall be adjusted in the same manner as set forth in paragraph 4(b) of this Lease Agreement and as if the term, "Operating Expense Rent", was directly substituted for the term, "Fixed Rent", in such paragraph 4(b); and such Operating Expense Rent and adjustments shall be invoiced as set forth in paragraph 4(c).
(c) Beginning on November 1, 1984 and on each subsequent November 1st during the remainder of the term or any renewal of this Lease Agreement, the Operating Expense Rent shall be subject to escalation. The rate to be applied in determining the revised Operating Expense Rent for each calendar month, beginning with and until the next such revision, shall be derived by the following formula:
 5¢ × Previous Year EES Factor
 1982 EES Year Factor
The resultant rate per barrel of crude oil shall then be substituted for the rate set forth in paragraph 5(a), and the Operating Expense Rent shall be determined and adjusted in all other respects as set forth in paragraphs 5(a) and (b). In no event shall the ratio of EES Factors set forth in this paragraph 5(c) be less than one (1).
[6] We note that while not squarely addressed under the Louisiana corporate taxing statutes, the Supreme Court has discussed the issue of whether or not a pipeline is an immovable under the Civil Code ownership articles in Guzzetta v. Texas Pipe Line Company, 485 So.2d 508 (La.1986). In Guzzetta, plaintiffs asserted a cause of action to recover the costs of removal of a pipeline under LSA-C.C. art. 495, which provides that the owner of an immovable to which another attaches or incorporates things that become component parts of the immovable may have them removed at the expense of the person who made them. The Court reasoned that this provision only applied to things that became component parts of an immovable, and that other constructions permanently attached to the ground (the pipeline) were not component parts of a tract of land when they belonged to a person other than the owner of the ground. The Court concluded that the pipeline was a construction permanently attached to the ground under LSA-C.C. art. 493 and, as such, plaintiffs had no right to compel or recover costs of removal of the pipeline. Guzzetta, 485 So.2d at 511.