I Judge TERRI F. LOVE.
This appeal arises out of an eviction proceeding, wherein the Plaintiffs allege that the Defendant violated the lease contract. For the following reasons, we affirm the decision of the trial court.

FACTS AND PROCEDURAL HISTORY

On May 24, 1991, Defendant, Mr. Joe Wong (“Mr.Wong”), entered into a contractual agreement with Plaintiffs, John G. Mule (“Mr.Mule”), Catherine M. Allen (“Ms.Allen”) and Rose Cusimano Noto (“Mrs.Noto”), to lease the premises located *641 at 400 Burgundy Street, New Orleans, Louisiana.
The lease provided for an initial term of tenancy to last three years at a rate of $1,850 per month. Mr. Wong was to pay half of his rent to Mr. Mule and Ms. Allen and the other half to Mrs. Noto. The lease began June 1, 1991 and ended May 31, 1994. The lease further provided Mr. Wong an option to renew the lease for two additional periods following the original term of the lease, subject to incremental rental increases for each additional term. At issue in this case is the interpretation of the option provision. Defendant and Plaintiffs agree that the | ^original term of the lease was three years at a rate of $1,850 per month. However, Defendant argues that at the end of the original term, the option provides him the right to extend the lease for two successive 3 year terms, continuing at the rental rate of $1,850 per month and then, after the three successive three-year terms have lapsed (totaling nine years), he again has the option to renew the lease for two three-year periods but at an increased rental rate of $2,000 per month for the first additional term and $2,300 per month for the second additional term. Contrarily, Plaintiffs argue that after the original three-year lease concludes, the option provides Mr. Wong the right to two additional three-year terms at $2,000 per month for the first additional term, and $2,300 per month for the second additional term.
Mr. Wong paid the $1,850 per month rent during the first term of the lease, and increased the rental payments to Mr. Mule and Ms. Allen to $2,000 and $2,300, respectively, during the two additional periods as stipulated in the option provision of the lease contract. However, Mr. Wong did not increase his rental payment to Mrs. Noto. Mr. Wong states that he questioned the increase in rent based upon his understanding of the lease contract; nonetheless, he paid it because he was under stress. In July of 1999, Mr. Wong ceased paying rent. Plaintiffs also allege that Mr. Wong failed to pay property taxes as required under the lease. Mr. Wong was served an eviction notice on August 24, 1999, and at a hearing on the rule on September 24, 1999, the trial court judge ordered him evicted from the premises.
| ^DISCUSSION
Standard of Review
Mr. Wong argues that the option provision in the lease contract presents an issue of contractual interpretation, and thus, constitutes an issue of law requiring de novo review. Plaintiffs argue that the lease contract is clear — the only issue is whether Mr. Wong complied with the provisions of the lease. Therefore, Plaintiffs argue that since this case presents issues of fact, the manifest error standard of review should be applied and not de novo review. From our review of the record and the disputed issues, we find that this case only presents issues of fact, and therefore, the manifest error standard of review applies. See Burkett v. Crescent City Connection Marine Division, 98-1237 (La.App. 4 Cir. 2/10/99), 730 So.2d 479. Under the “manifest error/clearly wrong” standard of review, the Court of Appeal may not set aside the trial court’s findings of fact unless those findings are clearly wrong in light of the record reviewed in its entirety. Mariner’s Village Mandeville, Inc. v. Fama, Inc., 95-1867 (La.App. 4 Cir. 3/14/96), 671 So.2d 1015.
The Option Provisions of the Lease Contract
There are two portions of the lease contract pertaining to Mr. Wong’s option to renew the lease. In pertinent part, these provisions state as follows:
*642 TERM The primary term of this lease shall be for a period of three (3) years beginning on June 1, 1991, and ending on May 31,1994, unless sooner terminated or extended as hereafter provided. LESSEE shall have and is hereby granted a total of two (2) successive options to extend the |4term of this lease for successive periods of three years upon the conditions as herein provided. If LESSEE shall elect not to exercise one or more of such options, it shall do so by giving LESSORS written notice at least one hundred twenty (120) days prior to the expiration of the primary term or of the then current extension.
[Emphasis added]
[[Image here]]
As further consideration of this lease, LESSORS grant to LESSEE the right and option to renew said lease on the same conditions at a rental of Two Thousand and No/100 Dollars ($2000) per month for an additional term of (3) years commencing at the termination of the additional term provided herein, provided, however, that the LESSEE is not in default hereof. LESSORS further grant to LESSEE the right and option to renew said lease on the same conditions, at a rental of Two Thousand Three Hundred and No/100 dollars ($2,300) per month for an additional term of three (3) years commencing at the termination of the additional term provided herein, provided, however, that the LESSEE is not in default hereof. The lease will automatically be extended unless the LESSEE has given LESSORS at least 120 days notice of his intention to cancel said lease. Notice must be in writing by Registered Mail, Return Receipt Requested.
Interpretation of a contract is the determination of the common intent of the parties. La. C.C. art.2045. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent. La. C.C. art.2046. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract. La. C.C. art.2050. [Emphasis added]. A doubtful provision must be interpreted in light of the nature of the contract, equity, usage, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties. State Through Dept. of Wildlife & Fisheries v. Anchor Gasoline Corp., 95-0528 (La.App. 1 Cir. 1/26/96), 669 So.2d 470, 475; La. C.C. art. 2053. In cases of doubt that cannot be otherwise ^resolved, a provision in a contract must be interpreted against the party who furnished its text. La. C.C. art.2056.
Mr. Wong presents the argument that the contract is ambiguous and thus, any interpretation of this ambiguity should be viewed in his favor. However, we fail to find any ambiguity in the contract when read in its entirety and thus, find that it is unnecessary to invoke this more stringent standard of contractual interpretation. Upon a plain reading of the language in the contract, it is clear to this Court that under the first term of the lease, Mr. Wong was obligated to pay his lessors $1,850 rent per month. In reference to the option provisions, the first provision states that Mr. Wong is granted “a total of two (2) successive options” to renew the lease. The second provision provides that he is obligated to pay $2,000 per month during the first additional term and $2,300 per month during the second additional term. Consequently, it is clear when reading the two provisions in conjunction with one another, as dictated by Louisiana Civil *643 Code Article 2050, the lease contract provides for the option to renew the lease for a total of two additional three-year terms at rental rates of $2,000 and $2,300 per month, respectively. See La. C.C. art. 2050.
As previously stated, Mr. Wong claims that he believed that under the lease, he was granted an “extension” of the lease for two additional three-year terms at the same rate of $1,850 per month. Mr. Wong believed that at the conclusion of the nine-year period, he had the option to renew the lease for two additional terms at the successive increased rental rates of $2,000 and $2,300 per month. He bases lathis interpretation upon the first line of the second paragraph which states that Mr. Wong has the option to renew the lease at the conclusion of “the additional term.” He argues that implicit in this statement is that after the original three-year term, there exists at least one additional term before the right of option takes effect. Despite Mr. Wong’s purported understanding of the lease, he paid the increased rent during the first additional period and part of the second additional period without protest because he claims that he was under stress. He now contends that he is due reimbursement for overpayment of rent.
As the Anchor case provides, we should take into consideration Mr. Wong’s conduct after the formation of the contract. See Anchor, 669 So.2d 470 at 475. He paid the increased rent for the additional lease terms as stipulated in the lease contract. This Court finds it highly implausible that Mr. Wong, in his dire financial straits, would agree to pay increased rent that was allegedly in violation of the lease without addressing this issue with Plaintiffs, even if he was under stress. In fact, any stress that Mr. Wong was allegedly experiencing surely could have been somewhat alleviated had he addressed his contentions about the rental increase.
It is apparent from the hearing on this rule, that the trial court judge failed to believe Mr. Wong’s explanation for his failure to pay rent and his reasons for not contesting the rental increase. The judge declined to accept Mr. Wong’s purported understanding of the lease as providing three successive lease terms at the amount of $1,850 per month, subject to an option at the conclusion of the total nine-year 17period. Instead, the trial judge interpreted the lease contract to provide for one primary term at $1,850 per month and the option of two additional terms at $2,000 and $2,300 per month, respectively. Accordingly, she ordered Mr. Wong evicted from the premises for failure to abide by the terms of the lease. We find no error in the trial judge’s interpretation of the lease contract and affirm the trial court’s judgment. As such, we find no basis in the record to award Mr. Wong reimbursement for an “overpayment” of rent.
In his final argument, Mr. Wong asserts that the trial court erred in failing to endorse an insurance check issued to him and his lessors, thereby preventing him from paying past due rent. We find that this assignment of error has no merit. After Mr. Wong failed to comply with the provisions of the lease, his lessors had no obligation to accept any money from him.
AFFIRMED.